WILLIAM WALLACE, PLAINTIFF IN ERROR, *vs.* CORRY M'CONNELL, DEFENDANT IN ERROR.

An action was instituted on a promissory note against the drawer, by which the drawer promised to pay at the office of discount and deposite of the Bank of the United States at Nashville, three years after date, four thousand and eighty dollars. In the declaration which set out the note according to its terms, and alleged the promise to pay according to the tenor of the note, there was no averment that the note was presented at the bank, or demand of payment made there. The defendant pleaded payment and satisfaction of the note, and issue was joined thereon. Afterwards, at the succeeding term, the defendant interposed a plea of puis darien continuance, stating, that four thousand two hundred and four dollars, part of the amount of the note had been attached by B. and W. in a state Court of Alabama, under the attachment law of the state, and a judgment had been obtained against him for four thousand two hundred and four dollars and costs, with a stay of proceedings until the further proceedings in the case ; which remains undetermined. The plaintiff demurred to this plea, and the Circuit Court sustained the demurrer ; and judgment was given for the plaintiff for six hundred and seventy-nine dollars, the residue of the note beyond the amount attached, and a final judgment for the whole amount of the note. Held, that there was no error in the judgment of the Circuit Court. The acceptor of a bill of exchange stands in the same relation to the drawee as the maker of a note does to the payee ; and the acceptor is the principal debtor in the case of a bill, precisely like the maker of a note. The liability of the acceptor grows out of and is to be governed by the terms of his acceptance ; and the liability of the maker of a note grows out of, and is to be governed by the terms of his note ; and the place of payment can be of no more importance in the one case than in the other.

It is of the utmost importance that all rules relating to commercial law should be stable and uniform. They are adopted for practical purposes, to regulate the course of commercial transactions. When a note or bill is made payable at a particular bank, as is generally the case, it is well known that according to the usual course of business, the note or bill is lodged at the bank for collection ; and if the maker or acceptor calls to take it up when it falls due, it will be delivered to him, and the business is closed. But should he not find the note or bill at the bank, he can deposite his money to meet the note when presented ; and should he be afterwards prosecuted, he will be exonerated from all costs and damages, upon proving such tender and deposite. Or should the note or bill be made payable at some place other than a bank, and no deposite could be made, or he should choose to retain his money in his own possession, an offer to pay the money at the time and place would protect him against interest and costs, on bringing the money into Court.

In actions on promissory notes against the maker, or on bills of exchange where the suit is against the maker, in the one case, and the acceptor in the other, and the note or bill is made payable at a specified time and place ; it is not necessary to aver in the declaration or prove on the trial, that a demand of payment was made in order to maintain the action. But if the maker or acceptor was at the place at the time designated, and was ready and offered to pay the money, it was matter of defence to be pleaded and proved on his part.

The jurisdiction of the District Court of the United States for the district of Alabama, and the right of a plaintiff to prosecute his suit, having attached by the commencement of the suit in the District Court, that right cannot be taken away or arrested by any proceedings in another Court. An attachment of the debt by the process of a state Court, after the commencement of the suit in a Court of the United States, cannot affect the right of the plaintiff to recover in the suit.

An attachment commenced, and conducted to a conclusion before the institution of a suit against the debtor in a Court of the United States, may be set up as a defence to the suit ; and the defendant would be prohibited pro tanto under a recovery had by virtue of the attachment, and could plead such recovery in bar. So, too, an attachment pending in a state Court, prior to the commencement of a suit in the Court of the United States, may be pleaded in abatement. The attachment of the debt in such case in the hands of the defendant, would fix it there in favour of the attaching creditors, and the defendant could not afterwards pay it over to the plaintiff. The attaching creditor would in such a case,

acquire a lien on the debt binding on the defendant, and which the Courts of all other governments, if they recognise such proceedings at all, would not fail to regard. The rule must be reciprocal; and when the suit in one Court is commenced prior to proceedings under attachment, in another Court, such proceedings cannot arrest the suit.

It seems that a plea of puis darien continuance, is considered as a waiver of all previous pleas; and the cause of action is admitted to the same extent as if no other defence had been urged than that contained in the plea.

IN error to the District Court of the United States for the southern district of Alabama.

The plaintiff in error, William Wallace, was sued in the District Court of Alabama, exercising the powers of a Circuit Court of the United States, on the second day of April, 1836, by a capias issued out of that Court, and returnable on the first Monday of May following. The action was brought on a promissory note, under the seal of the defendant, for four thousand eight hundred and eighty dollars, dated May 10, 1832, and payable to the plaintiff or to his order, at the office of discount and deposite of the Bank of the United States, at Nashville, three years and two months after date.

At the May term, 1836, of the District Court, the plaintiff filed a declaration on the note, in debt, alleging the non-payment of the note, although frequent demands had been made of the drawer. No demand was alleged to have been made at the office of discount and deposite of the Bank of the United States, at Nashville.

The defendant pleaded payment, on which issue was joined, and the case was continued.

At the succeeding term of the District Court, the defendant filed the following plea: That as to the sum of forty-two hundred and four dollars, part and parcel of the sum by the said plaintiff in said declaration demanded, he, the said plaintiff, ought not further to have and maintain his aforesaid action therefor, against him; because he saith, that after the said last continuance of this cause, that is to say, after the term of this Court held on the first Monday of May last, and before the December term aforesaid, to wit, on the eighth day of June, in the year 1836, at Mobile, to wit, in the district aforesaid, one William J. Blocker, John R. Blocker, and Benjamin Horner, merchants, trading under the name of Horner, Blocker and Co. by William J. Blocker one of the said firm, in behalf of himself and his copartner, caused to be sued out a certain writ of original attachment against the said Corry M'Connell, for the sum of forty-two hundred and four dollars; and which said writ was issued by Benjamin Wilkins, a justice of the peace of Mobile county, on the said eighth day of June, in the year 1836, and was directed to the sheriff of Mobile county, and was made returnable to the county Court of Mobile county, which was held on the second Monday in June, 1836. And the said defendant further avers, that the said plaintiffs in the said attachment, were at the time of suing out the same, residents of the state of Alabama; that the said Corry M'Connell was a non-resident, and citizen of the state of New York, and that the said plaintiffs did comply with the requisites of the statute, in such cases made

and provided, by giving bond and security, and filed affidavit, whereby it is shown that the said justice and the said county Court had jurisdiction of the said attachment, and that the said county Court could lawfully hear and determine the same. And the said defendant further saith, that in said original attachment, such proceedings were had; that he, the said William Wallace was on the said eighth day of June, 1836, summoned as a garnishee by the sheriff of Mobile county, and required to appear before the said county Court, and answer, on oath, what he was indebted to said Corry M'Connell. And the said William Wallace, defendant, further saith, that, in obedience to the said summons of garnishment, he, the said William, did appear before the said county Court of Mobile, at the said term of the said county Court held on the second Monday in June, 1836, before the judge of said Court then sitting, and was in said suit of attachment between the said Horner, Blocker and Co., plaintiffs, and Corry M'Connell, defendant, examined on oath, touching his indebtedness to the said Corry M'Connell; whereupon he did declare on oath, that he did execute to the said M'Connell, the note for the sum of four thousand eight hundred and eighty dollars, on which the said plaintiff in this suit hath declared, that he did pay, on the said note to said M'Connell, on the 24th day of September, 1833, the sum of three hundred and seventy-two dollars thirty-four cents, and that the remainder of said note was due by said Wallace to said M'Connell, &c. And the said defendant further saith, that in the said attachment by said Court, at the said June term thereof, it was ordered that the proceedings against said M'Connell be stayed for six months, and that notice be given to the said M'Connell of the pendency of said attachment, by letter, directed to New York; the said M'Connell being shown to be a resident of the state of New York. And the said defendant, Wallace, further saith, that in the said attachment, and upon the said writ of garnishment, the said Court at the said June term, then sitting, did make the further order following, to wit:

It appearing, to the satisfaction of the Court, that William Wallace has been duly summoned as a garnishee, and he having admitted an indebtedness to said defendant, to an amount greater than the amount sued for in the above entitled cause, it is considered by the Court, that said plaintiffs do recover from said garnishee, the sum of forty-two hundred and four dollars, the amount sued for in said case, together with the cost thereof, and that all proceedings against said garnishee be stayed until the final disposition of said case; wherefore the said cause was, in said county Court, at said June term, continued by said Court, as well against the said M'Connell as against the said Wallace, till the next term thereof, to be held in due course of law, that is to say, on the second Monday of February, in the year 1837. All which said proceedings in the said county Court, in which the said plea still remains pending and undetermined, are still in full force, and not reversed, vacated, or otherwise set aside, as by the record and proceedings in said Court, still remaining of re-

[Wallace vs. M'Connell.]

cord, will more fully and at large appear; and that he, the said defendant, is ready to verify: wherefore, he prays judgment, if the said plaintiffs ought further to have or maintain his said action therefor, against him, this defendant, as to the sum of four thousand two hundred and four dollars, parcel of the sum by the said plaintiffs above demanded, &c.

The plaintiff at the same term entered a demurrer to this plea of puis darien continuance, and prayed the Court to render judgment against the defendant for six hundred and seventy-six dollars thirty cents, parcel of the debt of four thousand eight hundred and eighty dollars, the amount of the note, which by the plea was wholly undefended; and as to the said plea of puis darien continuance, the plaintiff says that the plea of the defendant is not sufficient to bar him from maintaining his action on the said note, &c.

The Court, on the pleadings, gave judgment as follows: "As to the said sum of four thousand two hundred and five dollars; being argued by counsel, it seems to the Court that said plea, as to the said sum of forty-two hundred and five dollars, and the allegations therein contained, are not sufficient in law to bar the said plaintiff from having and maintaining his aforesaid action therefor against the said defendant; whereupon, it is ordered by the court, that the said demurrer be sustained; but as to the sum of six hundred and seventy-five dollars, thirty-nine cents, the residue of said plaintiff's debt, in his declaration mentioned, this day came the plaintiff, by his attorney, and the said defendant, being solemnly called, came not, but wholly made default, as to the said last mentioned sum, whereby the said plaintiff, therein against him remains altogether undefended. It is therefore considered by the Court, that the said Corry M'Connell, plaintiff, do recover against the said William Wallace, defendant, the said sum of four thousand eight hundred and eighty dollars and thirty-nine cents, his debt aforesaid, and also the further sum of three hundred and ninety-four dollars, the inteest thereon, assessed by the clerk of this Court by way of damages, for the detention of the same, together with his cost in this cause; the plaintiff remits to the defendant the sum of three hundred and fifty-one dollars, twenty-eight cents."

The record of the District Court stated: "In this cause the Court decided that the plea of puis da ien continuance was a waver of the previous plea pleaded by the defendant: there was no default of the defendant, further than his abandonment, under the decision of the Court, of his first plea. In this cause the defendant moved the Court to stay proceedings in the said cause until the final decision of the County Court of Mobile county, upon the attachment of Horner, Blocker and Co.; which motion was overruled."

The defendant prosecuted this appeal.

The case was argued by Mr. Key, for the plaintiff in error; and by Mr. Crittenden, for the defendant.

[Wallace *vs.* M'Connell.]

For the plaintiff, it was contended,

1. That the demurrer should have been overruled, the matters pleaded being sufficient under the attachment laws of Alabama.

2. That the judgment, by nil dicit, as to the residue of the debt, viz., the $675 39, not attached, was erroneous; inasmuch as it was covered and defended by the first plea of payment to the whole debt, which plea was not waived by the subsequent plea, which only went to part of the debt claimed in the action.: parties being allowed by the law and practice in Alabama to plead any number of pleas to the same cause of action.

3. That the declaration on the note does not aver that payment of the note was demanded at the office of discount and deposite of the Bank of the United States, at Nashville, where the same was payable.

Upon the first point, Mr. Key contended that the attachment in the State Court of Alabama was a bar to further proceeding in the District Court. If this be not so, the plaintiff in the Court below will twice recover the amount of his debt from the defendant: once in the District Court, and again in the State Court; as his debt to the attaching creditor will be paid under the judgment of that Court.

The plaintiff in error had answered to the attachment, that he owed to M'Connell, the defendant in error, the amount of the debt claimed by the plaintiff in the attachment; and this, by the attachment law of Alabama, fixed his responsibility. But as to the residue of the note, he continued liable to the plaintiff in the District Court, if liable at all. The District Court decided that the plea of the attachment was a waiver of the first plea. This was not so; it could operate, only, if it had any operation as to part of it.

The case of the defendant in error is put on the ground that the attachment was no bar to the suit in the District Court of Alabama. This would be so, if in the attachment case the garnishee could plead the existing action in the District Court. This he could not do. It was not a plea to the attachment, that a suit was pending for the debt attached; and this is the law of Alabama, as it is in all the states in which attachment laws exist. By the customs of London such a plea would be good; but not so here.

By the attachment laws of Alabama, every thing in the shape of goods or credits, whether sued for or not, even judgments and money in the hands of the sheriff, may be attached; and the garnishee can only defend himself by showing that he had nothing in his hands, and owed nothing to the defendant in the attachment. No matter how he owed it, whether sued for or not. Aiken's Digest, 37, sec. 15, 16, 19.

Nor can the defendant in the attachment suit complain. He has full notice of this proceeding, and may appear and dissolve the attachment; and he has security for the restoration of the property in a year and a day, should the plaintiff in the attachment have recovered improperly.

In the case before the Court, the plea of puis darien continuance

[Wallace *vs.* M'Connell.]

is said to have overruled the plea of payment, entered to the plaintiff's declarations, and thus makes it apply to the whole of the claim of the plaintiff; when, in fact, its application was for a sum less than the amount of the note, leaving the balance, six hundred and seventy-five dollars thirty-nine cents, undefended. This is founded upon the supposition that such a plea withdraws the whole defence originally pleaded. But this is not so; the plea has no operation but to the sum stated in it: and in this case, the attachment had seized upon four thousand two hundred and five dollars, leaving the residue of the note sued upon protected from a judgment of the Court, on the original plea of payment. The case in 2 Wendall's Reports, 300, fully sustains this position.

2. Do not the attachment laws of the states interpose a bar to a suit commenced before the attachment?

It is important that this question should be considered, and the principle settled; and that the property of absent debtors shall be liable to pay their creditors. Much of the credit which an individual, who is a non-resident, obtains, is often derived from the debts due to him at the place or in the country in which the credit is given; as they are considered liable, under the attachment laws of the states, to the payment of his debts. Thus the credit operations of the country are made safer, and commercial transactions are beneficially extended.

It seems to be considered by the District Court of Alabama, that the attachment in the State Court could not operate after the commencement of the suit on the note. But the only question to the original debtor under the attachment was, do you owe the money? And no state of things, such as a suit, or surety for the defendant in the attachment, could exempt him from liability for the amount in his hands.

It is said, it is different in England: this is so to some extent. By the attachment law, under the customs of London, a debt in suit cannot be attached. But this is not the law in the states of the United States. The attachment law of England, under the customs of London, is peculiar in many of its features; although in some respects our laws are the same. Customs of London, 265—268. By that law, debts in suit, debts on judgments, cannot be attached; our laws give no such exemptions.

It is a settled principle, that the property of absent debtors is liable, by legislation, to the payment of their debts. This is a rule in almost all the states of the Union; and it will not be disturbed by the Courts of the United States. Cited, Aiken's Digest of the Laws of Alabama, 37. Sergeant on Attachment, 161. 2 Dallas, 279. 2 Yeates, 192. 9 John. Rep. 221. 20 John. Rep. 229—231, 239, 268. 4 Cowan, 521. 1 Peters' C. C. R. 245. 8 Cowan, 311, 315. 1 Harris and M'Henry, 236. 2 Harris and M'Henry, 466. 1 Alabama Rep. 129. 12 Martin's Rep. 68.

Upon these authorities, it is immaterial whether the attachment was commenced before or after the suit was instituted.

3. It is contended that the plea of puis darien continuance, is a waiver of all preceding pleas.

This may be admitted, so far as the plea goes, but it does not extend beyond the matter of the plea; nor is it an abandonment of a defence which is not affected by the plea. Where it is pleaded to a part of the bill sued on, and not to the whole amount of it, the original plea stands for the residue unaffected by the special plea. This must be so, or the grossest injustice might arise; as the defendant, who should desire to avail himself of a just defence to a part of a debt claimed from him, must give up a defence which would be equally available against another part of it.

The authorities do not sustain the position upon which the decision of the District Court was made. When the plea of puis darien continuance goes to a part only of the claim, it has no extent to any other or further part. 1 Alabama Rep. 129. 2 Wendall, 300.

The last objection is that there is no averment of a demand at the bank of deposit, at Nashville; and no demand is stated to have been made there.

Can an action be maintained without proving that the money was not at the bank of deposite, in Nashville, to pay it; and that a demand was made there in conformity with the note? It has been decided that as to the endorser on a note of this description, it is necessary to prove such a demand. Smith *vs.* the Bank of the United States, 11 Wheat. 171. The same principle should apply in an action against the drawer.

Mr. Crittenden, for the defendant, said, there are but two questions in the case.

1. Whether the plea puis darien continuance is a good bar to the action.

2. Whether that plea was a waiver of the first plea of payment.

As to the first question, it is insisted, on the part of M'Connell, that neither the pendency of an attachment, nor condemnation under it, if the attachment be issued after the commencement of his suit, can form any legal defence or bar to that suit. And for authority on this point, reference is made to 3 Wilson, 297—304. Brooks *vs.* Smith, 1 Salkeld, 280. Savage's case, 1 Salkeld, 291. 5 Johns. Reps. 101. 5 Taunton, 558. 4 Durnford and East's Reps. 312. 16 Eng. Com. Law Reps. 78 and 79.

As M'Connell's suit was brought long before the attachment pleaded in bar of it, it follows, therefore, that the decision of the Court upon the demurrer to that plea was correct. If the matter of the plea was available at all, it could only have been pleaded in abatement. 1 Chitty, 697.

As to the second question, we refer to Chitty's Pleading, vol. i. 697, &c., and the cases cited in the note thereto; and also to the case of Kenner and Bussard *vs.* Marshall, 1 Wheaton, 215. In the case referred to in Chitty, he says : " A plea puis darien continuance, is not a departure from, but is a waiver of the first plea, and no ad-

vantage can afterwards be taken of it; nor can even the plaintiff afterwards proceed thereon."

Upon the whole matter, therefore, it is contended that the judgment ought to be affirmed.

Mr. Justice THOMPSON delivered the opinion of the Court.—

This case comes up on a writ of error from the District Court of the United States for the southern district of Alabama.

The action in the Court below was founded upon a note, which, although under seal, is considered in Tennessee a promissory note; and is in the words following:

" Three years and two months after date, I promise to pay Corry M'Connell or order, at the office of discount and deposite of the Bank of the United States, at Nashville, four thousand eight hun dred and eighty dollars, ninety-nine cents, value received." The declaration sets out this note according to its terms, and alleges the promise to pay at the office of discount and deposite of the Bank of the United States, at Nashville; without averring that the note was presented at the bank or demand of payment made there. The defendant pleaded payment and satisfaction of the note; and issue being joined thereupon, the cause was continued until the next term thereafter. At which time the defendant interposed, a plea puis darien continuance, alleging that the plaintiff, as to the sum of four thousand two hundred and four dollars, part and parcel of the sum demanded in the declaration, ought not further to have and maintain his action therefor against him, because that sum had been attached by Bl cker and Co., by proceedings commenced by them against the plaintiff in this cause, under the attachment law of Alabama, in which he was summoned as garnishee. And setting out the proceedings against him according to the requirements of that law, and under which he was examined on oath; and did declare, that he executed the note to the said M'Connell, the plaintiff in this cause, as set out in the declaration; that he had paid on the note three hundred and seventy-two dollars and thirty-four cents, and that the remainder of the said note was due by him to said M'Connell. And the plea further sets out, that under the proceedings on the attachment, the Court had given judgment against him for four thousand two hundred and four dollars and costs; but with a stay of all further proceedings until the further disposition of the case, and which remains yet undetermined.

To this plea the plaintiff demurred. And the Court sustained the demurrer, and gave judgment for the plaintiff for six hundred and seventy-five dollars and thirty-nine cents, the residue of the plaintiff's debt in his declaration mentioned, by default; and thereupon gave a final judgment for the plaintiff for the full amount of the note, four thousand eight hundred and eighty dollars, the debt aforesaid, and three hundred and ninety-four dollars, the interest assessed by the clerk, together with his cost. And the plaintiff remits upon the record the sum of three hundred and fifty-one dollars

[Wallace *vs.* M'Connell.]

and twenty-eight cents; and the questions arising upon this record have been made and argued under the following objections:

1. That the declaration is bad for want of an averment that the note was presented, and payment demanded at the office of discount and deposite of the Bank of the United States, at Nashville.

2. That the matters pleaded of the proceedings under the attachment laws of Alabama, were sufficient to bar the action, as to the amount of the sum so attached; and that the demurrer ought therefore to have been overruled.

3. That the judgment by nil dicit, for the six hundred and seventy-five dollars and thirty-nine cents, was erroneous.

The question raised as to the sufficiency of the declaration in a case where the suit is by the payee against the maker of a promissory note, never has received the direct decision of this Court. In the case of the Bank of the United States *vs.* Smith, (11 Wheat. 172.) the note upon which the action was founded was made payable at the office of discount and deposite of the Bank of the United States, in the city of Washington; and the suit was against the endorser, and the question turned upon the sufficiency of the averment in the declaration of a demand of payment of the maker. And the Court said, when in the body of a note, the place of payment is designated, the endorser has a right to presume that the maker has provided funds at such place to pay the note; and has a right to require the holder to apply at such place for payment. In the opinion delivered in that case, the question now presented in the case before us is stated: and it said, whether where the suit is against the maker of a promissory note, or the acceptor of a bill of exchange, payable at a particular place, it is necessary to aver a demand of payment at such place, and upon the trial to prove such demand; is a question upon which conflicting opinions have been entertained in the Courts in Westminster Hall. But that the question in such case may, perhaps, be considered at rest in England, by the decision of the late case of Rowe *vs.* Young, (2 Brod. and Bing. 165.) in the House of Lords; where it was held, that if a bill of exchange be accepted, payable at a particular place, the declaration on such bill, against the acceptor, must aver presentment at that place, and the averment must be proved. But it is there said a contrary opinion has been entertained by Courts in this country; that a demand on the maker of a note, or the acceptor of a bill payable at a specified place, need not be averred in the declaration or proved on the trial; that it is not a condition precedent to the plaintiff's right of recovery. As matter of practice, application will generally be made at the place appointed; if it is believed, that funds have been there placed to meet the note or bill. But if the maker or acceptor has sustained any loss by the omission of the holder to make such application for payment, at the place appointed, it is matter of defence to set up by plea and proof. But it is added, as this question does not necessarily arise in this case, we do not mean to be understood as expressing any decided opinion upon it, although we are strongly

[Wallace *vs.* M'Connell.]

inclined to think, that as against the maker of a note or the acceptor of a bill, no averment or proof of a demand of payment at the place designated would be necessary. The question now before the Court cannot, certainly, be considered as decided by the case of the Bank of the United States *vs.* Smith. But it cannot be viewed as the mere obiter opinion of the judge who delivered the judgment of the Court. The attention of the Court was drawn to the question now before the Court; and the remarks made upon it, and the authorities referred to, show that this Court was fully apprized of the conflicting opinions of the English Courts on the question; and that opinions, contrary to that of the House of Lords, in the case of Rowe *vs.* Young, had been entertained by some of the Courts in this country: and under this view of the question, the Court say they are strongly inclined to adopt the American decisions. As the precise question is now presented by this record, it becomes necessary to dispose of it.

It is not deemed necessary to go into a critical examination of the English authorities upon this point; a reference to the case in the House of Lords, which was decided in the year 1820, shows the great diversity of opinion entertained by the English judges upon this question. It was, however, decided that if a bill of exchange is accepted, payable at a particular place, the declaration in an action on such bill against the acceptor, must aver presentment at that place, and the averment must be proved. The Lord Chancellor, in stating the question, said this was a very fit question to be brought before the House of Lords, because the state of the law, as actually administered in the Courts, is such, that it would be infinitely better to settle it in any way than to permit so controversial a state to exist any longer. That the Court of King's Bench has been of late years in the habit of holding, that such an acceptance as this, is a general acceptance; and that it is not necessary to notice it as such in the declaration, or to prove presentment, but that it must be considered as matter of defence; and that the defendant must state himself ready to pay at the place, and bring the money into Court, and so bar the action by proving the truth of that defence. On the contrary, the Court of Common Pleas was in the habit of holding, that an acceptance like this was a qualified acceptance, and that the contract of the acceptor was to pay at the place; and that as matter of pleading, a presentment at the place stipulated must be averred, and that evidence must be given to sustain that averment; and that the holder of the bill has no cause of action unless such demand has been made. In that case the opinion of the twelve judges was taken and laid before the House of Lords, and will be found reported in an appendix to the report of the case of Rowe *vs.* Young, (2 Brod. and Bing. 180.) In which opinions all the cases are referred to in which the question had been drawn into discussion; and the result appears to have been, that eight judges out of the twelve sustained the doctrine of the King's Bench on this question; notwithstanding which the judgment was reversed

It is fairly to be inferred from an act of parliament passed immediately thereafter, 1 and 2 G. 4, ch. 78, that this decision was not satisfactory. By that act it is declared that "after the 1st of August, 1821, if any person shall accept a bill of exchange payable at the house of a banker or other place, without further expression in his acceptance, such acceptance shall be deemed and taken to be, to all intents and purposes, a general acceptance of such bill. But if the acceptor shall, in his acceptance, express, that he accepts the bill payable at a banker's house or other place only, and not otherwise or elsewhere; such acceptance shall be a qualified acceptance of such bill; and the acceptor shall not be liable to pay the bill, except in default of payment, when such payment shall have been first duly demanded at such banker's house or other place." Bayley on Bills, 200, note.

In most of the cases which have arisen in the English Courts, the suit has been against the acceptor of the bill; and in some cases a distinction would seem to be made between such a case, and that of a note when the action is against the maker, and the designated place is in the body of the note. But there can be no solid grounds upon which such a distinction can rest. The acceptor of a bill stands in the same relation to the drawee, as the maker of a note does to the payee; and the acceptor is the principal debtor, in the case of a bill, precisely like the maker of a note. The liability of the acceptor grows out of, and is to be governed by the terms of his acceptance, and the liability of the maker of a note grows out of, and is to be governed by the terms of his note; and the place of payment can be of no more importance in the one case than in the other. And in some of the cases where the point was made, the action was against the maker of a promissory note, and the place of payment designated in the body of the note. The case of Nichols *vs.* Bowes, 2 Camp. 498, was one of that description, decided in the year 1810; and it was contended on the trial, that the plaintiff was bound to show that the note was presented at the banking house where it was made payable. But Lord Ellenborough, before whom the cause was tried, not only decided that no such proof was necessary, but would not suffer such evidence to be given; although the counsel for the plaintiff said he had a witness in Court to prove the note was presented at the banker's the day it became due: his Lordship alleging that he was afraid to admit such evidence, lest doubts should arise as to its necessty. And in the case of Wild *vs.* Renwards, 1 Camp. 425, note, Mr. Justice Bayley, in the year 1809, ruled that if a promissory note is made payable at a particular place, in an action against the maker, there is no necessity for proving that it was presented there for payment.

The case of Saunderson *vs.* Bowes, 14 East, 500, decided in the King's Bench in the year 1811, is sometimes referred to as containing a different rule of construction of the same words when used in the body of a promissory note, from that which is given to them when used in the acceptance of a bill of exchange. But it may be

well questioned, whether this use warrants any such conclusion. That was an action on a promissory note by the bearer against the maker. The note, as set out in the declaration, was a promise to pay on demand at a specified place, and there was no averment that a demand of payment had been made at the place designated. To which declaration the defendant demurred; and the counsel in support of the demurrer referred to cases where the rule had been applied to acceptances on bills of exchange; but contended that the rule did not apply to a promissory note, when the place is designated in the body of the note. Lord Ellenborough, in the course of the argument, in answer to some cases referred to by counsel, observed; those are cases where money is to be paid, or something to be done at a particular time as well as place, therefore the party (defendant) may readily make an averment, that he was ready at the time and place to pay, and that the other party was not ready to receive it; but here the time of payment depends entirely on the pleasure of the holder of the note. It is true Lord Ellenborough did not seem to place his opinion, in the ultimate decision of the cause, upon this ground. But the other judges did not allude to the distinction taken at the bar between that case and the acceptance of a bill in like terms; but placed their opinions upon the terms of the note itself, being a promise to pay on demand at a particular place. And there is certainly a manifest distinction between a promise to pay on demand, at a given place, and a promise to pay at a fixed time at such place. And it is hardly to be presumed that Lord Ellenborough intended to rest his judgment upon a distinction between a promissory note and a bill of exchange, as both he and Mr. Justice Bayley had a very short time before, in the cases of Nichols *vs.* Bowes, and Wild *vs.* Renwards, above referred to, applied the same rule of construction to promissory notes where the promise was contained in the body of the note. Where the promise is to pay on demand at a particular place, there is no cause of action until the demand is made; and the maker of the note cannot discharge himself by an offer of payment, the note not being due until demanded.

Thus we see that until the late decision in the House of Lords in the case of Rowe *vs.* Young, and the act of parliament passed soon thereafter, this question was in a very unsettled state in the English Courts; and without undertaking to decide between those conflicting opinions, it may be well to look at the light in which this question has been viewed in the Courts in this country.

This question came before the Supreme Court of the state of New York, in the year 1809, in the case of Foden and Slater *vs.* Sharp, 4 Johns. Rep. 183; and the Court said the holder of a bill of exchange need not show a demand of payment of the acceptor, any more than of the maker of a note. It is the business of the acceptor to show that he was ready at the day and place appointed, but that no one came to receive the money; and that he was always ready afterwards to pay. This case shows that the acceptor of a bill, and the maker of a note, were considered as standing on the same footing with re-

spect to a demand of payment at the place designated. And in the case of Wolcott *vs.* Van Santvoord, 17 Johns. Rep. 248, which came before the same Court in the year 1819, the same question arose. The action was against the acceptor of a bill, payable five months after date at the Bank of Utica, and the declaration contained no averment of a demand at the Bank of Utica; and upon a demurrer to the declaration, the Court gave judgment for the plaintiff. Chief Justice Spencer, in delivering the opinion of the Court, observed that the question had been already decided in the case of Foden *vs.* Sharp : but considering the great diversity of opinion among the judges in the English Courts on the question, he took occasion critically to review the cases which had come before those Courts, and shows very satisfactorily, that the weight of authority is in conformity to that decision, and the demurrer was accordingly overruled; and the law in that state for the last thirty years, has been considered as settled upon this point. And although the action was against the acceptor of a bill of exchange, it is very evident that this circumstance had no influence upon the decision; for the Court say that in this respect the acceptor stands in the same relation to the payee, as the maker of a note does to the indorsee. He is the principal, and not a collateral debtor.

And in the case of Caldwell *vs.* Cassady, 8 Cowen, 271, decided in the same Court in the year 1828, the suit was upon a promissory note payable sixty days after date at the Franklin Bank in New York; and the note had not been presented or payment demanded at the bank: the Court said, this case has been already decided by this Court in the case of Wolcott *vs.* Van Santvoord. And after noticing some of the cases in the English Courts, and alluding to the confusion that seemed to exist there upon the question, they add : that whatever be the rule in other Courts, the rule in this Court must be considered settled, that where a promissory note is made payable at a particular place on a day certain, the holder of the note is not bound to make a demand at the time and place by way of a condition precedent to the bringing an action against the maker. But if the maker was ready to pay at the time and place, he may plead it, as he would plead a tender in bar of damages and costs, by bringing the money into Court.

It is not deemed necessary to notice very much at length the various cases that have arisen in the American Courts upon this question; but barely to refer to such as have fallen under the observation of the Court, and we briefly state the point and decision thereupon, and the result will show a uniform course of adjudication, that in actions on promissory notes against the maker, or on bills of exchange, where the suit is against the maker in the one case, and acceptor in the other, and the note or bill made payable at a specified time and place, it is not necessary to aver in the declaration, or prove on the trial, that a demand of payment was made in order to maintain the action. But that if the maker or acceptor was at the place at the time designated, and was ready and offered to pay the money, it was matter of defence to be pleaded and proved on his part.

[Wallace vs. M'Connell.]

The case of Watkins vs. Crouch and Co., in the Court of Appeals of Virginia, 5 Leigh, 522, was a suit against the maker and endorser, jointly, as is the course in that state upon a promissory note like the one in suit. The note was made payable at a specified time, at the Farmers' Bank, at Richmond, and the Court of Appeals, in the year 1834, decided, that it was not necessary to aver and prove a presentation at the bank and demand of payment in order to entitle the plaintiff to recover against the maker; but that it was necessary in order to entitle him to recover against the endorser: and the President of the Court went into a very elaborate consideration of the decisions of the English Courts upon the question; and to show, that upon common law principles, applicable to bonds, notes, and other contracts for the payment of money, no previous demand was necessary in order to sustain the action, but that a tender and readiness to pay must come by way of defence from the defendant; and that looking upon the note as commercial paper, the principles of the common law were clearly against the necessity of such demand and proof, where the time and place were specified, though it would be otherwise where the place, but not the time, was specified; a demand in such case ought to be made: and he examined the case of Sanderson vs. Bowes, to show that it turned upon that distinction, the note being payable on demand at a specified place.　The same doctrine was held by the Court of Appeals of Maryland in the case of Bowie vs. Duvall, 1 Gill and Johnson, 175; and the New York cases, as well as that of the Bank of the United States vs. Smith, 11 Wheat. 171, are cited with approbation, and fully adopted; and the Court put the case upon the broad ground, that when the suit is against the maker of a promissory note, payable at a specified time and place, no demand is necessary to be averred, upon the principle that the money to be paid is a debt from the defendant, that it is due generally and universally, and will continue due, though there be a neglect on the part of the creditor to attend at the time and place to receive or demand it.　That it is matter of defence on the part of the defendant to show that he was in attendance to pay, but that the plaintiff was not there to receive it; which defence generally will be in bar of damages only, and not in bar of the debt.　The case of Ruggles vs. Patton, 8 Mass. Rep. 480, sanctions the same rule of construction.　The action was on a promissory note for the payment of money, at a day and place specified; and the defendant pleaded that he was present at the time and place, and ready and willing to pay according to the tenor of his promises, in the second count of the declaration mentioned, and avers that the plaintiff was not then ready or present at the bank to receive payment, and did not demand the same of the defendant, as the plaintiff in his declaration had alleged: the Court said this was an immaterial issue and no bar to an action or promise to pay money.

So also in the state of New Jersey the same rule is adopted.　In the case of Weed vs. Houten, 4 Halst. N. J. Rep. 189, the Chief Justice says: "The question is whether in an action by the payee of

N 2

a promissory note payable at a particular place and not on demand, but at time, it is necessary to aver a presentment of the note and demand of payment by the holder at that place, at the maturity of the note.  And upon this question he says, I have no hesitation in expressing my entire concurrence in the American decisions, so far as is necessary for the present occasion; that a special averment of presentment at the place, is not necessary to the validity of the declaration, nor is proof of it necessary upon the trial.  This rule I am satisfied, is most conformable to sound reason, most conducive to public convenience, best supported by the general principles and doctrines of the law, and most assimulated to the decisions, which bear analogy more or less directly to the subject."

The same rule has been fully established by the Supreme Court of Tennessee, in the cases of M'Nairy *vs.* Bell, and Mulhovin *vs.* Hannum, 1 Yerger, Rep. 502, and 2 Yerger, Rep. 81, and the rule sustained and enforced upon the same principles and course of reasoning upon which the other cases referred to have been placed.  And no case, in an American Court, has fallen under our notice, where a contrary doctrine has been asserted and maintained.  And it is to be observed, that most of the cases which have arisen in this country, where this question has been drawn into discussion, were upon promissory notes, where the place of payment was, of course, in the body of the note.  After such a uniform course of decisions for at least thirty years, it would be inexpedient to change the rule, even if the grounds upon which it was originally established might be questionable; which, however, we do not mean to intimate.  It is of the utmost importance, that all rules relating to commercial law should be stable and uniform.  They are adopted for practical purposes, to regulate the course of business in commercial transactions; and the rule here established is well calculated for the convenience and safety of all parties.

The place of payment in a promissory note, or in an acceptance of a bill of exchange, is always matter of arrangement between the parties for their mutual accommodation, and may be stipulated in any manner that may best suit their convenience.  And when a note or bill is made payable at a bank, as is generally the case, it is well known that, according to the usual course of business, the note or bill is lodged at the bank for collection; and if the maker or acceptor calls to take it up when it falls due, it will be delivered to him, and the business is closed.  But should he not find his note or bill at the bank, he can deposit his money to meet the note when presented, and should he be afterwards prosecuted, he would be exonerated from all costs and damages, upon proving such tender and deposite.  Or should the note or bill be made payable at some place other than a bank, and no deposite could be made, or he should choose to retain his money in his own possession, an offer to pay at the time and place, would protect him against interest and costs, on bringing the money into Court; so that no practical inconvenience or hazard can result from the esta-

blishment of this rule, to the maker or acceptor. But, on the other hand, if a presentment of the note and demand of payment at the time and place, are indispensable to the right of action, the holder might hazard the entire loss of his whole debt.

The next point presents the question as to the effect and operation of the proceedings under the attachment law of Alabama, as disclosed by the plea puis darien continuance. The plea shows that the proceedings on the attachment were instituted after the commencement of this suit. The jurisdiction of the District Court of the United States, and the right of the plaintiff to prosecute his suit in that Court, having attached, that right could not be arrested or taken away by any proceedings in another Court. This would produce a collision in the jurisdiction of Courts, that would extremely embarrass the administration of justice. If the attachment had been conducted to a conclusion, and the money recovered of the defendant before the commencement of the present suit, there can be no doubt that it might have been set up as a payment upon the note in question. And if the defendant would have been protected *pro tanto*, under a recovery had by virtue of the attachment, and could have pleaded such recovery, in bar, the same principle would support a plea in abatement, of an attachment pending prior to the commencement of the present suit. The attachment of the debt, in such case, in the hands of the defendant, would fix it there in favour of the attaching creditor, and the defendant could not afterwards pay it over to the plaintiff. The attaching creditor would, in such case, require a lien upon the debt, binding upon the defendant, and which the Courts of all other governments, if they recognise such proceedings at all, could not fail to regard. If this doctrine be well founded, the priority of suit will determine the right. The rule must be reciprocal; and where the suit in one Court is commenced prior to the institution of proceedings under attachment in another Court, such proceedings cannot arrest the suit; and the maxim qui prior est tempore, portior est jure, must govern the case. This is the doctrine of this Court in the case of Renner and Bussard *vs.* Marshall, 1 Wheat. 216, and also in the case of Beaston *vs.* The Farmers' Bank of Maryland, 12 Peters, 102; and is in conformity with the rule that prevails in other Courts in this country, as well as in the English Courts; and is essential to the protection of the rights of the garnishee; and will avoid all collisions in the proceedings of different Courts, having the same subject matter before them. 5 John. Rep. 100. 9 John. Rep. 221, and the cases there cited. In the case now before the Court, the suit was commenced prior to the institution of proceedings under the attachment. The plea was, therefore, bad, and the demurrer properly sustained.

The remaining inquiry is, whether the judgment, by nil dicit, for the $675, was properly given, after overruling the plea puis darien continuance. The argument at the bar was, that as the attachment went only to a part of the debt, the case stood as to the residue upon the original plea of payment. The facts disclosed in the plea, puis

darien continuance, do not raise the question intended to be presented; for the defence set up in the plea puis darien continuance goes to the whole cause of action, and leaves no part unanswered. And it may well be questioned, whether such pleading ought to be sanctioned, even if the plea, puis darien continuance, went only to a part of the cause of action. It would introduce great confusion on the record in the state of the pleadings.

It is laid down in Bacon's Abridgment, (6 Bac. Ab. by Gwillim, 377,) that if after a plea in bar, the defendant pleads a plea puis darien continuance, this is a waiver of his bar; and no advantage shall be taken of any thing in the bar. And it is added, that it seems dangerous to plead any matter puis darien continuance unless you be well advised, because, if that matter be determined against you, it is a confession of the matter in issue. This rule was adopted in Kimball *vs.* Huntington, 10 Wendall, 679. The Court say, the plea puis darien continuance waived all previous pleas, and on the record, the cause of action was admitted to the same extent as if no other defence had been urged than that contained in this plea.

In the case now before the Court, the oath of the defendant taken in the proceedings on the attachment, is made a part of the plea puis darien continuance. And he admits that he executed the note on which this suit is brought, for $4880. That he had paid on the note $372 34; and that the remainder of the note was due by him to the plaintiff. And if the $4204 attached could not be deducted, the whole debt, according to his own admission, was due, except the $372 34, set up by him to have been paid; and the plaintiff remits upon the record $351 28, and the judgment will stand within a few dollars for the amount admitted by the defendant to be due. And this difference must arise from some error in the mere calculation, and may easily be corrected.

The judgment of the Court below is accordingly affirmed, with costs.

This cause came on to be heard on the transcript of the record from the District Court of the United States, for the Southern District of Alabama, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said District Court, in this cause be, and the same is hereby, affirmed, with costs and damages at the rate of six per cent. per annum.