CASE No. 969.

## THE BANK OF CHARLESTON NATIONAL BANKING ASSOCIATION v. ZORN.

1. A motion, made at the trial and without notice, to strike out a part of the answer, may be entertained by the Circuit judge, if the defendant does not object to the hearing of the motion.
2. In an action by the endorsee of a promissory note against the maker, the Circuit judge properly refused to strike out a defence, which, in substance, was a plea of payment without notice of transfer.
3. A witness, to refresh his memory, may refer to an account current furnished him by his factor, if such examination enables him then to testify from his own recollection. The rules stated.
4. In charging the jury that if they believed the plaintiff was guilty of laches in not demanding payment of the note at the office of W. & D. before their failure, and that plaintiff would have received the money if the note had been presented, and by their failure to do so the defendant lost his money, they should find for defendant, the Circuit judge did not leave to the jury the legal question of what was laches.
5. The maker of a promissory note, which was payable to his factors at their office, placed there funds sufficient to meet the note at maturity, and afterwards, in settlement, was charged with the amount, and a balance in cash was paid to him, but the note was not produced or taken up. After the subsequent failure of the factors, the note was presented by an endorsee, who had received it before due for value. *Held*, that the maker was not responsible for the payment of the note, by reason of his failure to take up the note at the time of the settlement.
6. While it is not necessary, as a prerequisite to action brought, that such endorsee should have demanded payment on or after maturity, at the place designated, yet for any loss which the maker shows to have resulted from the failure to make such presentment and demand, the holder is responsible.

Before ALDRICH, J., Barnwell, February, 1880.

This action was commenced January 7th, 1878, and was upon a promissory note, made by J. B. Zorn, the defendant, on January 29th, 1876, for $157.51, and payable to the order of Wroton & Dowling, at their office, in Charleston, on October 1st, 1876, and endorsed before maturity to the Bank of Charleston Na-

tional Banking Association, as collateral security to a note of Wroton & Dowling, given for money borrowed from plaintiff, the collaterals being in the proportion of about $2 for every $1 of the principal debt. The note of Wroton & Dowling was renewed several times after October 1st, 1876, the defendant's note, with other collaterals, remaining in the possession of the bank.

The complaint was in the usual form, endorsee *versus* maker. A motion was made at the trial without previous notice, to strike out the first defence in the answer as irrelevant, which was overruled and the ruling excepted to. This defence was as follows:

Alleges for a first defence:

1. That Wroton & Dowling, the payees of the note mentioned in the complaint, were, at the time it was delivered, and from thence hitherto until their failure in business as hereinafter mentioned, factors and commission merchants, doing business in the city of Charleston, and the said note was given for advances made by them to this defendant.

2. That according to the regular course of dealing universally recognized and observed between factors and their country customers, such advances, even when secured by negotiable paper, were also accustomed to be met by shipments of cotton in the fall and winter following, to be sold by the factor on commission, the net proceeds to be applied to the customer's account of the current year.

3. That besides the sum expressed in the said note, other advances to a considerable amount were made to this defendant by said Wroton & Dowling during the year 1876, to meet which, this defendant, from time to time, during the fall of that year and up to January 18th, 1877, forwarded cotton to said firm, the net proceeds of which were applied to his credit on general account, and on the day last mentioned his entire indebtedness to said firm, including the sum for which said note was given, was fully paid and satisfied.

4. That plaintiff received the said note from Wroton & Dowling, together with a number of other notes of their country customers, as collateral security to a note of said firm, given to plaintiff for a loan of money. That the plaintiff well knew the

course of dealing hereinbefore referred to, had uniformly acquiesced in the same when such collaterals were delivered to it, and knew further that the note of this defendant came within the scope of said usage, and was in due course to be paid by proceeds of cotton to be forwarded as aforesaid.

5. That this defendant never had notice, or even an intimation, that his said note was held by plaintiff, nor that payment direct to the plaintiff instead of the said Wroton & Dowling was expected or required until April, 1877, after said firm had failed in business and become insolvent.

The evidence showed that Wroton & Dowling were cotton factors and commission merchants in Charleston, and the defendant, a farmer, resident in Barnwell county, was one of their customers, the note in suit having been given for supplies of merchandise advanced defendant by them, the understanding being that it was to be met by the proceeds of cotton to be shipped to them by defendant for sale on commission, as was the general custom in Charleston between factors and their country customers. Defendant testified that he knew the note would be put in some bank by Wroton & Dowling as collateral to their own notes for loans. The custom between Wroton & Dowling and the bank, (which was a general custom between factors and banks in Charleston,) was that when a note was paid, Wroton & Dowling would call at the bank and take out the paid note, either paying to the bank the amount of their own note when due, or depositing other notes in the place of the collateral note. Plaintiff never demanded payment of the collateral note at the office of Wroton & Dowling. The collection and lifting of such notes was left invariably to the factor.

On January 18th, 1877, Zorn had a settlement with Wroton & Dowling, when they paid him a balance, as per account current, then delivered to him by them, in which the amount of the note in suit, as well as other indebtedness, was charged and deducted from the credits. Zorn, at this settlement, asked that the note be delivered to him, when Wroton said that it had been misplaced, but that he would get it and send it to him in a few days. The note was never sent, and Zorn made no further

inquiry about it. Wroton testified that if Zorn had insisted on it the note would have been procured for him, or its amount paid to him when the settlement was made. About six weeks after this settlement, Wroton & Dowling failed. They had become embarrassed in business by reason of the failure of their customers to forward cotton to meet their engagements in the fall of 1876, and in November suspended. The banks that held their paper, including the plaintiff, through its president, Mr. Johnson, agreed, after consultation together, that the firm should go on collecting, and apply proceeds of after-collections towards payment of their country customers, the $5000 then on hand to be distributed in paying the several banks *pro rata*. In February, 1877, $5000, proceeds of collections on hand at date of agreement, were so applied, the plaintiff receiving $1000, and delivering up, with its collaterals, another note of Wroton & Dowling held by plaintiff. The *pro rata* distribution thus made, pursuant to agreement, was without reference to the collaterals of country customers, from whom the collections were made. Wroton testifies that but for this arrangement to apply collections *pro rata*, without reference to the source of collection, the firm would have been able to take up the paid collaterals held by the banks. The note of Wroton & Dowling to the plaintiff, to which the note in suit was collateral, was renewed several times after their suspension in November; the collaterals, including the note in suit, remaining in pledge. Wroton & Dowling finally failed in February or March, 1877. Defendant never had any intimation of their embarrassment or suspension until March or April, 1877, after their failure; nor was he informed until then that the plaintiff held his note.

There was a further arrangement or custom between plaintiff and Wroton & Dowling, that demand for payment at the office of the latter was waived, they agreeing to pay at the bank. But there was no proof that defendant was privy to such arrangement or was informed of it. He testified that he had no special understanding with Wroton & Dowling as to the manner of payment, other than the terms of the note indicated, and that he would meet it by forwarding cotton.

An account current between defendant and Wroton & Dow-

ling was introduced to show that Zorn had in their hands, on October 1st, 1876, funds more than sufficient to pay the note, and that the note was charged in the account, and the amount thereof was never withdrawn by defendant. This account was objected to as not the best evidence, and the objection was sustained, but the witness was allowed to state that the account was received by him from Wroton & Dowling on January 18th, 1877, when they settled; that defendant then compared the bills of goods, memoranda and account sales of cotton sent to him at the times of the several transactions itemized in said account with the several items of the account, and found them to correspond, and the account to be correct in all particulars, and now testifies to its correctness, and that if, by the account, it appeared that he had sufficient funds in their hands on October 1st, it was correct. Witness was then allowed to refresh his memory by the account, and then to state that he had such funds there on the day named, and that he had not, since October 1st, 1876, withdrawn so much of said fund as covered the amount then due on said note. Counsel was also allowed to use this account in his argument, to show to the jury that by deducting the debits from the credits on October 1st, defendant had to his credit more than enough to pay the note, and that enough to pay the note remained in the hands of Wroton & Dowling to his credit, from October 1st, 1876, up to the time of their failure in February or March, 1877.

No demand for payment was ever made at the office of Wroton & Dowling, and Wroton testified that if such demand had been made the note would have been paid.

The testimony adduced was altogether on the part of the defendant, who, under the pleadings assumed the burden of proof. The plaintiff offered no testimony.

The court charged the jury that if they believed the plaintiff was guilty of laches in not demanding payment of the note at the office of Wroton & Dowling before their failure, and that plaintiff would have received the money if the note had been presented, and by their failure to do so the defendant lost his money, they should find for defendant; and further, that the bank was bound to demand payment at the said office, if funds

to meet it were there on October 1st, 1876, and remained there up to the time of the failure of Wroton & Dowling.

The court refused to charge that the defendant was bound to take up his note when he settled with Wroton & Dowling, and that his loss was caused by his failure so to do.

The jury found for defendant.

The plaintiff appealed to this court upon the following grounds, to wit:

1. Because his Honor erred in not ruling out, as irrelevant, the first defence in said defendant's answer contained, and in permitting testimony to go to the jury to establish said defence.

2. Because his Honor erred in permitting the account current between Wroton & Dowling and defendant to be used in evidence, and to be commented upon by counsel, to show that on October 1st, 1876, defendant had in the hands of Wroton & Dowling more than sufficient funds to meet the payment of the note in suit on that day.

3. Because his Honor charged the jury that if they believed the plaintiff was guilty of *laches* in not demanding payment of the note at the office of Wroton & Dowling, and by that means the defendant lost his money, they should find for defendant; whereas, it is respectfully submitted, that the question of *laches* is one of law for the court, and not of fact for the jury, the facts upon which it was based being admitted.

4. Because his Honor should have charged the jury that the defendant was bound to take up his note when he settled with Wroton & Dowling, and that his loss was caused by his failure so to do.

5. Because his Honor erred in charging the jury that the bank was bound to demand payment at the office of Wroton & Dowling, for the proof was clear that the uniform custom, acquiesced in by all parties, was that payment should be made at the bank.

*Mr. John R. Bellinger*, for appellant.

*Mr. John J. Maher*, contra.

2 F

January 10th, 1881. The opinion of the court was delivered by

Simpson, C. J. Did the Circuit judge err in not ruling out the first defence stated in the answer, is the first question for our consideration.

In *Cohrs* v. *Fraser*, 5 *S. C.* 351, where a similar question arose, the court said : "A motion to strike out a part of defendant's answer as inconsistent, contradictory, or for any other cause, should be made after notice in a reasonable time from the filing of the answer." This was regarded necessary to prevent surprise, and perhaps a continuance of the cause. This course was not pursued here, and the judge, therefore, might have declined to hear the motion, but it was heard, and it seems without objection by the defendant, respondent. The question involved is, consequently, properly before us.

The complainant claimed that plaintiff, appellant, was the legal owner and holder of a note on defendant, respondent, made payable to the order of Wroton & Dowling, no part of which had been paid. The first defence set up in the answer was, in substance, payment. It is true that the circumstances and transactions out of which it is claimed by defendant, respondent, that payment had been made, are stated with unnecessary circumlocution and detail, but, when analyzed, the point of this defence seems to be payment without notice of any transfer to the plaintiff.

This was no new contract, changing and altering the original by verbal testimony, but it was a substantial and material defence which the defendant, respondent, had the right to set up, and which the Circuit judge properly refused to strike out.

It is objected, second, that an account current between the respondent and Wroton & Dowling was allowed to be made use of by the defendant, respondent, as a witness, to refresh his memory as to the amount of money in the hands of Wroton & Dowling, at a certain date, sufficient to have discharged the note in question and this is made the second ground of appeal.

The rule upon this subject, in its broadest outline, embraces two classes of cases : first, where the witness, after referring to the paper, speaks from his own memory, and depends upon his

own recollection as to the facts testified to; second, where he relies upon the paper and testifies only because he finds the facts contained therein. In the first class the paper is always permitted to be used by the witness without regard to when or by whom made.

In the second class this rule of admission is much more stringent. In fact, it cannot be used unless it be an original paper made by the witness himself, and contemporaneously with the transaction referred to.

Admitted under any other circumstances, it would be obnoxious to the doctrine of hearsay and other important principles regulating the admission of evidence, and would render the administration of justice uncertain and doubtful. The principles above laid down will be found sustained in 1 *Greenl.*, § 436; *State* v. *Rawls*, 2 *N. & McC.* 331; *Cleverly* v. *McCullough*, 2 *Hill* 446; and *O'Neale* v. *Walton*, 1 *Rich.* 234. In this case the account current was offered as evidence, but, upon objection, was ruled out. The witness was afterwards permitted to examine it, and upon this examination he was prepared to speak from recollections, and did so speak, as it appears from the record—at least so we understand from the brief agreed upon by the counsel. Whether he was entitled to credit, testifying under such circumstances, or could speak from memory after examining the paper, was for the jury, and is not a matter before us. The question here is, was it legally competent for him thus to testify? We think this case falls within the first class above referred to, and that there was no error on the part of the Circuit judge in ruling the testimony competent.

We see nothing objectionable in the charge of the judge on the third exception. It is true he did not define to the jury in general terms what, as a matter of law, was the meaning of the term *laches*. He, however, states "that if the jury believed the plaintiff did not demand payment of the note at the office of Wroton & Dowling [the place of payment] before their failure, and that plaintiff would have received the money if the note had been presented, and by their failure to do so the defendant lost his money, they should find for defendant," on account of *laches*. In this he kept the question of law and the facts separate and

distinct, and the facts only seem to have been submitted to the jury.

The fourth exception raises the question that the respondent was bound to take up his note when he settled with Wroton & Dowling, and that it was error on the part of the judge not to so charge when requested.

. The note was due on the 1st of October, 1876, and payable at the office of Wroton & Dowling, in Charleston.   The respondents lived in Barnwell county, and the final settlement was made between the parties on the 18th of January, 1877, whether in Charleston or Barnwell does not appear.   The theory of the defence is that funds had been left in the hands of Wroton & Dowling to pay this note as far back as October of the preceding year.   It seems that it was known by respondent that his note might be deposited with some bank and that the bank was entitled to these funds in the hands of Wroton & Dowling.   All, therefore, that the respondent was concerned about in the settlement was that he should get credit for this amount which he had left at the place of payment.   This he received in the settlement, and we do not see that his failure to demand and take up the note was in violation of his legal duty; nor was it error in the presiding judge to decline to so charge; parties are presumed to know the law.

This note on its face was payable at the office of Wroton & Dowling on October 1st, 1876, and when the respondent left there on that day the amount required to pay it, it was in effect discharged in the hands either of the payee or any other holder. If he had withdrawn the funds from Wroton & Dowling and paid the note on the day of settlement without taking it up, then he might have been responsible to any third party who may have held it, but this was not done.

The settlement embraced the transactions of the year between the parties, and in the settlement, as we understand it, the respondent was allowed a credit for this note on October 1st preceding, when it fell due.

The last exception alleges error in that the judge charged that the bank was bound to demand payment at the office of Wroton & Dowling, &c.   The English commercial law, when

strictly applied and enforced, seems to require that demand shall be made at the place of payment, when specified in the note, either on the day of payment or at some future time, and without this, no default arises on the part of the maker for non-payment.

The American doctrine, however, is not so rigid; demand is not a precedent condition here, and suit may be brought against the maker under that doctrine without presentment or demand at the place mentioned, subject, however, to the right of the maker to prove by way of defence that on the day and at the place specified he had the necessary funds to make payment, and that if any loss has occurred it should be the loss of the holder of the note and not his; in other words, the burden of proof is shifted; instead of requiring the plaintiff to prove that he made demand, the maker, defendant, is required to prove that he deposited the money according to the terms of the note, and that it was lost to the plaintiff on account of his failure to demand it at the proper place.    *Wallace* v. *McConnell,* 13 *Peters* 136; *Story on Promissory Notes,* §§ 227, 228, *and note to page* 287; *Walcott* v. *Van Santvoord,* 17 *Johns.* 248; *Clarke* v. *Gordon,* 3 *Rich.* 313.

Now, if the matter complained of in the last exception had stood alone in the judge's charge, the exception would be well founded, as the charge in this respect is not in accordance with the above principles, but when the whole charge on this branch of the case is taken together, as appears in the brief, it is apparent that the judge properly qualified the doctrine as a whole when he instructed the jury " that if they believed the plaintiff was guilty of laches in not demanding payment of the note at the office of Wroton & Dowling before their failure, and that plaintiff would have received the money if the note had been presented, and by their failure to do so the defendant lost the money, they should find for the defendant."

This is, we think, in accordance with the American doctrine, and was a part of the judge's charge, and properly qualified that which, when taken in detached portions, might be regarded as error.

The judgment below is affirmed and the appeal dismissed.

MCIVER and MCGOWAN, A. J.'s, concurred.