Dickman, J.
It is alleged in the original petition, that to secure the payment of the note upon which the action was founded, the Bridge Company indorsed and deposited with the Savings Bank, as collateral security, the note made by the Commissioners of Highways of Panola township. And the *229 Bridge Company avers, that it assigned and transferred to the plaintiff below, by its written indorsement thereon, the note of the commissioners, and delivered the same to the plaintiff, under the circumstances and upon the consideration set forth in the petition. The Bridge Company and the Savings Bank, therefore, sustain towards each other, the relation of pledgor and pledgee. Notes deposited as collateral security are regarded as pledges, whether they have been indorsed and delivered as a part of the transaction of loan, or have been simply delivered without indorsement, where indorsement is required.
What then was the obligation resting upon the Savings Bank in reference to the collateral note which it held ? The general rule is that, where negotiable instruments, executed by third parties, are indorsed and delivered as collateral security for the promissory note of the pledgor, so that the pledgee of them becomes a party thereto, and such collateral paper matures before the principal ■ debt, the obligation of the pledgee in collection thereof is performed by the exercise of reasonable and ordinary care and diligence. As held in Roberts v. Thompson, 14 Ohio St. 1, where a party receives a note as collatei’al security for an existing debt, without any special agreement, he is bound to use ordinary care and diligence in collecting it, and such cases are not governed by the strict rules of commercial law applicable to negotiable paper. See Reeves v. Plough, 41 Ind. 204; Lawrence v. McCalmont, 2 How. U. S. 426; Noland v. Clark, 10 B. Mon. 239; Miller v. Gettysburg Bank, 8 Watts, 192.
We do not find, nor is it claimed, that there was any negligence, or want of due diligence on the part of the Savings Bank, in taking the proper steps for the collection of the collateral note or pledge. The facts, as admitted by the record are, that a short time before the collateral fell due, the cashier of the Savings Bank, according to the custom of banks and the usage of the Savings Bank in like cases, sent the collateral note to the El Paso Bank, where, by its terms, it was made payable, with instructions to collect and forward the money in the usual way — by exchange on New York. The cashier re *230 ceived a letter from the officers of the El Paso Bank, dated the day the collateral matured, saying, “that it had not been paid,” which information he promptly conveyed to the Bridge Company. But about the time the collateral fell due, the El Paso Bank did receive the amount due thereon, and shortly thereafter failed, and the Savings Bank immediately communicated that fact to the secretary of the Bridge Company, who wrote to one of that company’s agents travelling in the west, requesting him to go to El Paso and look after the matter. Before receiving the collateral paper, the Savings Bank had no knowledge of the existence of the El Paso Bank, and when the collateral was forwarded to it for collection, that bank, so far as was learned through commercial agencies and otherwise, was in good credit, nor was there any other bank or collection broker at that timo in the town of El Paso.
There was nothing to put the pledgee of the collateral on guard, or create suspicion as to the solvency of the collecting bank. Under the existing circumstances, it was the plain duty of the Savings Bank to 'lodge the collateral for collection at the designated bank, and in no other place. Had the Commissioners of Highways, with funds in hand and ready to pay, failed to find their note on deposit at the place appointed for payment, and afterwards become insolvent, the Bridge Company might well have charged the Savings Bank with supine negligence. So far as it pertained to the degree of care and diligence required of the Savings Bank as a pledgee, it was not for it to ask why the collateral note was made payable at a particular bank, or whether so made payable for the convenience of the makers or payee or both, unless, before forwarding it for collection, the pledgee had reason to doubt the good credit of the collecting bank — which it did not have in the present instance. The language of the instrument, and the delivery of it by the payee and owner as collateral security, without any new or qualifying direction, served as a notice and guide to the pledgee which it could not safely disregard. The pledgee, it is said, is a savings bank, but generally, while it is not among the powers and privileges of such institutions to make collections for the holders of negotiable paper, when *231 tbey loan money upon collateral security, and it devolves upon them to collect such collateral, their duties, rights and liabilities as pledgees, arc to be determined by the same rules and principles that govern natural persons.
It is true that it seems'to be the accepted doctrine in America, that no presentment or demand of payment need be made at the specified place, on the day when a note becomes due, orafterwards, in order to maintain a suit against the maker.’ But if the maker has funds at the appointed place at the time to pay the note, and it is not duly presented, he will in the suit be exonerated, not, indeed, from the payment of the principal sum, but from the payment of all damages and costs in that suit. While, however, the payee and holder of the paper may, if he pleases, neglect presentment and demand at the appointed bank or place, the receiver of the paper as collateral, in the exercise of due care and diligence, should have the paper at the appointed place, for payment at maturity.
It is urged, however, in behalf of the plaintiff in error, that the Savings Bank received the note made by the commissioners of highways merely for the purpose of collection — the amount realized therefrom to be applied towards the payment of the note in suit. The El Paso Bank, it is claimed, was the agent of the Savings Bank — that payment to the agent was payment to the principal — and that, therefore, the loss of the collateral through the insolvency of the El Paso Bank, must be born by the Savings Bank, and not by the Bridge Company.
Granting that it was incumbent upon the defendant in error to transmit the paper at the proper time and to the proper place for payment, the defendant did not select the agent to collect the note, for that, as we think, had already been done by the plaintiff in error. It is alleged that the note was made payable at the bank by the makers, merely for their own convenience in making payment, and without consulting the payee. But the payee accepted and became party to the note, and delivered it as security without intimation that any other place of payment was contemplated, than that named in the body of the instrument. Nor can the bank as the place of payment, be separated from its officers who received, in due course of *232 business, the amount of the note from its makers. It is generally understood in the mercantile world when negotiable instruments are made payable at a particular bank, that the paper will in due time be lodged in that bank for collection, and that the bank through its proper officer will receive the money when paid by the debtor. In Ward v. Smith, 7 Wall447, Field, J., in delivering the opinion of the court, says: “It is undoubtedly true that the designation of the place of payment in the bonds imported a stipulation that the holder should have them at the bank, when due, to receive payment, and that the obligors would'produce there the funds to pay them. It was inserted for the mutual convenience of the parties. And it is the general usage in such cases for the holder of the instrument to lodge it with the bank for collection, and the party bound for its payment can call there and take it up. If the instrument be not there lodged, and the obligor is there at its maturity with the necessary funds to pay it, he so far satisfies the contract that he cannot be made responsible for any future damages, either as costs of suit or interest, for delay.”
And in the early case of Wallace v. McConnell, 13 Peters, 136, it is stated by the court, that the place of payment in a promissory note, or in an acceptance of a bill of exchange, is always matter of arrangement between the parties, for their mutual accommodation, and may be stipulated in any manner that may best suit their convenience; and that when a note or bill is made payable at a bank, it is well known that, according to the usual course of business, the note or bill is lodged at the bank for collection; and, that if the maker or acceptor calls to take it up when it falls due, it will be delivered to him, and the business be then closed. Indeed, the common understanding is, that the appointment of the bank as the place where the note is to'be paid, implies the agency of the bank in making the collection.
The El Paso Bank being, in our opinion, the appointee of the Bridge Company and the Commissioner of Highways, and not of the defendant in error, the decision in Reeves v. The State Bank, 8 Ohio St. 465, can have no immediate bearing upon the present case. The rule, resting upon the sound *233 est judgment, was there laid down, that where a bank in this state receives for collection a draft payable in another state, and for the same purpose forwards the draft to its correspondent in such other state, the bank here is responsible to the owner for the conduct of such correspondent, and for the proceeds of the draft, immediately upon its collection by such correspondent. Such correspondent, it was held, is the agent of the bank here, and not the sub-agent of the owner of the draft; and payment to the agent is payment to the bank, unless there was some agreement or authority between the owner and the bank, beyond the mere fact of the draft being received for collection. It entered into the reasoning of the court of errors, in Allen v. The Merchants’ Bank of New York, 22 Wend. 215, that when a note is left by the owner at a bank, and received for the purpose of being sent to some distant place for collection, he makes an implied contract with the bank, that the proper and expedient means shall be used to collect the note, and he presumes that proper agents will be employed The owner having no part in the selection of those agents and the bank in making collections for its customers not rendering a gratuitous, but more often a lucrative service, it has been deemed not unreasonable to hold the bank responsible for the conduct of the agents it employs. But it can not, consistently with the facts in the present case, be said, that the Savings Bank was left to the exercise of its discretion, in the appointment of an agent to collect the note which it held as security. On the contrary, the El Paso Bank must be held to have been adopted by the plaintiff in error and the Commissioners of Highways, for their own convenience, as their agent for that purpose. For the foregoing reasons, we have reached the conclusion that the judgment of the circuit court should be affirmed.

Judgment accordingly.