SUMNER *against* FORD & Co.

ERROR *to Chicot Circuit Court.*

In an action against the maker of a promissory note, or the acceptor of a bill of exchange, made payable at a particular place, is not necessary to aver or prove presentment or demand at that place.

But the place at which the note or bill is to be paid, must be stated in the declaration, by way of description; and if not stated, the declaration is bad on demurrer.

A demurrer to a declaration is joint and several by our practice; and if there be one bad count and one good one, it should be sustained as to one, and overruled as to the other.

A declaration on a note payable *in future,* with interest from date, must aver the nonpayment of such interest, or it is bad on demurrer; and a judgment on such declaration, for ten per cent. interest, is bad, as being for too much.

This was an action of debt, by Ford & Co., against Sumner. The declaration, in its commencement, demanded the sum of $571 86, and contained two counts, one setting out a note due thirty days after date, for $571 86, payable at the plaintiff's counting room in New-Orleans, with interest from date; the second, a note for the same amount, due and dated like the former, with interest from date, but saying nothing as to the place of payment. The breach negatived the payment of the principal of each note, without saying any thing as to the interest. The defendant craved oyer, and it was granted, by filing a note corresponding with the one described in the first count, which was incorporated by the defendant in a demurrer for variance and insufficiency of the breach. The demurrer was overruled, and judgment went upon it.

TRAPNALL and COCKE, for plaintiff in error:

The breach of the contract, being being essential to the cause of action, must in all cases be stated in the declaration. It should be asigned in the words of the contract, either negatively or affirmatively, or in words which are co-extensive with the import and effect of it. 1*st Chitty*, 365. The contract declared upon in this case, contains two stipulations—one for the payment of a certain sum at a future day, and one for the payment of interest upon that sum from the date of

Sumner *against* Ford & Co.

the contract. The breach assigned alleges the non-performance of only one of those stipulations, and consequently is not co-extensive with the contract. The Court below evidently erred in overruling the demurrer and giving judgment for the *interest*, when there was no averment in the declaration that interest had not been paid.

PIKE, *Contra:*

The only question in this case is, whether, in a suit upon a note due at a future day, with interest from *date*, at no special rate, the non-payment of the interest must be averred in the breach.

The argument of the plaintiff in error assumes the form of a syllogism. Interest, says he, accrues on this contract, not *ex vi legis*, but *ex vi contractus:* the breach must be co-extensive with the contract; therefore, it must negative the payment of interest as well as principal.

This is also the reasoning of the Court in the case of *Clary & Webb vs. Morehouse.* But, first, we do not regard this case and that as parallel; and secondly, after a careful and patient examination of the argument of the Court in that case, and much reflection upon it, we have not been able to divest our minds of the impression that the conclusions arrived at therein are not warranted by strict law. We therefore ask the indulgence of the Court, while we submit whether that case is sound law, and whether, if so, it must govern the present.

The history of the law concerning interest has been very ably investigated by Senator SPENCER, in *Rensselaer Glass Factory vs. Reid,* 5 *Cowen,* 587. He says: "It seems to be the better-opinion (*Hawkins, book* 1, *ch.* 82,) that by the ancient common law, it was absolutely unlawful to take any kind of interest, or usury, as it was then called, for money. In an anonymous case, in *Hardress,* (*Hard.* 420,) LORD HALE is reported to have said, that "Jewish usury was prohibited at common law, being 40 per cent. and more, but no other." He then goes on to show, from Hume, the the statute of 37 Henry 8, chap. 9, passed in 1546, fixed the interest of money at ten per cent., the first legal interest known in England. This statute, and all others passed in England on the subject, are *negative;* prohibiting of interest being taken above a certain rate; none of them are affirmative, they

do not declare in what cases interest shall be taken; much less do they in any case require it to be paid.

He then remarks, that it follows inevitably and irresistibly, upon the universal principle of all law, that a man cannot be made legally liable to pay interest, as such, without his own agreement to that effect. All liability must be created by law or by agreement.

He then quotes the case of *Colton vs. Bragg*, 15 *East.*, 226, in which Lord ELLENBOROUGH said, "Lord Mansfield sat here for upwards of thirty years, Lord Kenyon for above thirteen years, and I have now sat here for more than nine years, (a period of 52 years), and during this long course of time, no case has occurred where, upon a mere simple contract or lending, without an agreement for the payment of the principal at a certain time, or for interest to run immediately, or under special circumstances, from which a contract for interest was to be inferred, has interest been ever given."

Senator Spencer, therefore, lays it down as established "beyond all question or cavil," that the allowance of interest by the Court, as an incident to the debt, is always founded on the agreement of the parties. "It will be seen," he says, "that most of the cases in England and in this country recognize the great principle, and that it is the only one upon which they can be reconciled and harmonized. It is one of plain common sense, easily applied, and which rejects all the artificial reasoning which has been sometimes employed."

This agreement, he says, may be expressed in writing or by words, or it may be implied—implied, first, from the custom or usage of the business; and, second, where the principal is to be paid at a specific time, the law has always implied an agreement to make good the loss arising from a default, by the payment of interest. *Robison vs. Bland*, 2 *Burr*, 1086. "All contracts to pay," said Lord Thurlow, "undoubtedly give a right to interest from the time when the principal ought to be paid." 2 *Bro. C. C.*, 3.

So such an agreement is implied, in case of money lent, from the time it was agreed to be paid; upon an account liquidated; and in various other cases; "in all of which," says Senator Spencer, "the interest is considered a necessary incident to the debt, following it, as is said in one of the cases, *like a shadow following its body*.

Although this was a dissenting opinion, yet, so far as we have quoted it, the principles laid down were in no manner controverted by the bench or the bar. And in the same case, in the Supreme Court, 3 *Cowen*, 425, SUTHERLAND, J., upon a full review of all the authorities, declared the true principle to be, that interest was a necessary incident to the principal debt, and that the Courts implied a promise to pay it, from the day the debt becomes due, if not paid. And he held that this promise was supported by the universal obligation which rests upon every man to render a just equivalent for the use or detention of that which does not belong to him. " The value of money," said he, " is the legal rate of interest. That, then, shall be paid."

So in *Selleck vs. French*, 1 *Conn.*, 32, SWIFT, J., said, " Interest, by our law, is allowed on the ground of some contract, express or implied, to pay it; or as damage for the breach of some contract, or violation of some duty." " Interest," said POWELL, J., in *Sweatland vs. Squire*, 2 *Salk.*, 623, " is recovered by way of damages, where damages are recovered, *ratione detentionis debiti;* but not where damages only are recovered; for interest is not recovered *occasione damnorum.*"

It is very clear, we think, from these authorities, that prior to the enactment of any statute in this country upon the subject, interest was recoverable solely on the ground that there was a contract or agreement, express or implied in law, to pay it, except in cases where a jury could give damages for the breach of a contract or the violation of a duty, and make a certain rate of interest the measure of those damages. Up to that time, neither the common law nor any statute had *required* and made *obligatory* the payment of interest, but it was merely *allowed*—allowed upon the ground that there was a contract, either express or implied, to pay it. And no interest was recoverable by law, before the statute of Henry 8 had allowed it.

While the law stood in this situation, the Legislature of the Louisiana Territory declared, (and they have been followed by our Revised Code,) that creditors should be allowed to receive interest at the rate of six per centum per annum, when no other rate of interest is agreed upon, for all moneys after they become due by any instrument of the debtor in writing, on money lent, &c., and " on all other moneys, due and to become due, for the forbearance of payment whereof, an

Sumner *against* Ford & Co.

express promise to pay interest has been made." And it is also further provided, that the parties may agree in writing for the payment of interest not exceeding ten per centum per annum, on money due or to become due upon any contract, whether under seal or not. *Ter. Dig.*, 310; *Rev. St.*, 469.

The present is one of the cases in which, for money to become due, interest is allowed by law at six per centum per annum, because, for the forbearance of it, an express promise to pay interest has been made. The *rate* of the interest here is fixed *by law;* the day on which it commences accruing, and on which the forbearance commences, is fixed by the contract.

It seems to us, indeed, that in all cases under our statute, interest accrues as a consequence of the joint operation of the contract and the law. This is denied by the plaintiff in error, who claims that, as interest accrues on every note, from the time it falls due, where no interest is provided for in the note, at six per centum per annum, the interest accrues in such case solely by operation of law; but as there must be an express stipulation in writing for a higher rate, or for interest before the principle is payable, consequently, the interest accrues in this case by operation of the contract alone.

When, by written contract, money is to be paid at a day certain, the law gives six per cent. interest from that day, as a *consequence*, or rather, *as an inherent, implied part* of that contract. The promise to pay being made, the law fixes the consequences, as regards interest. So when accounts are settled, and the balance ascertained, there is an *implied* contract to pay, and the law gives interest as a *consequence* of that implied contract.

The interest could no more accrue without the contract and promise to pay, express or implied, than without the law which makes it a consequence of that contract.

So, when a contract is made in writing, to pay ten per cent. interest, the law gives interest at that rate, as a consequence of that contract. For it is indisputable, as we have already shown, that until the passage of the statutes allowing interest, no agreement for interest could be enforced. It is not by virtue of the contract alone, that such rate of interest can be enforced. The contract fixes the *rate*, but

the interest accrues by *law*. The law gives the right to recover interest in this case, as much as in the other. In each case there must be a particular contract, express or implied; and in each case the law gives a particular rate of interest, as a consequence of the particular contract. In one case, it is an *implied* part of the contract, that interest shall be paid at the rate of six per cent.; in the other, it is an *express* part of the contract, that interest shall be paid at ten per cent. In each case, a promise to pay interest is a part of the contract; and in each case, the law gives the interest; for without the statute, no interest could be recovered, contract or no contract.

If the contract is simply to pay the principal, the law says that the debtor shall pay interest at six per cent. Without the contract, interest would not accrue; and, consequently, it accrues as much by operation of the *contract* as of the *law*. If the contract is to pay the principal, with eight or ten per cent. interest, the law says that the debtor shall pay with interest at that rate. Without the law, the interest could not be recovered; and, consequently, it accrues as much by operation of *law* as of the *contract*. In either case alike, the contract established, the law fixes the consequences, and determines the result as to interest.

In the present case, the argument is still stronger. In an ordinary note, for the mere payment of a sum of money at a given day, the law presumes that the creditor never had a right to demand the money until that day; in other words, that he did not commence to *forbear* until that day; and, therefore, from that day, interest begins to run, as an implied part of the contract. But if the interest is to run from date, although the interest is not payable until a given time thereafter, this is an admission, both in law and fact, that the money was due when the note was given, but the creditor had agreed to forbear until the day specified for payment. In each case, the contract merely ascertains *when the forbearance actually commenced*. That ascertained, the law gives interest from that day, at the legal rate.

We are therefore inclined to the opinion, that it is far from clear, whether there is any such distinction as is claimed as to interest at the *legal* rate accruing *ex vi legis*, and interest at the *conventional* rate accruing *ex vi contractus*. We are not satisfied that interest does not,

in one case equally as in the other, accrue by operation of law and the contract jointly. However this may be, we hold it to be self-evident, that whether the legal interest is to commence accruing at one time or the other, it accrues as much by operation of law in one case as in the other.

Yet we do not imagine that, even if we are mistaken on this point, the consequences claimed by the plaintiff will result. Interest is, in every place, a part of the contract. Where the contract is merely to pay the principal, there is also an implied contract to pay interest on default. The law makes this a part of the contract. The law itself, existing when a contract is made, enters into forms and a part of the contract. The *express* stipulation to pay ten per cent. interest, is not one whit more a part of the contract, than is the implied stipulation to pay six per cent. interest. It needs no quotations to establish a principle that lies at the foundation of the law of contracts.

Now, if the principle that "the breach must not be narrower than the contract," can be made to apply to this case and this question, it would be necessary, in every case, to negative the payment of the interest, whether legal or conventional.

The truth is, that here has arisen the error which has led the plaintiff astray:—why is the pleader not required to aver non-payment of the interest in ordinary cases? Because the interest is an incident of the principal, it is said. True; it is an incident of the principal, in this, that when the principal becomes due, interest accrues by law. But it is not so far an incident, that it necessarily follows that the interest remains unpaid because the principal does. On the contrary, payment must be first applied, to keep down the interest. It is not necessary to aver that the debtor became *liable* to pay interest; because interest is an incident of the debt, and he becomes liable to pay it, by operation of law. Nor is it any more necessary to make such averment of liability, when the contract is to pay a higher rate of interest, or interest from date; because the recital of the contract shows the liability, the law being judicially known to the Court. The liability is equally shown in each case. In each, it accrues as a consequence of the contract; or, if you choose, in one case the law *implies* a promise to pay interest, in the other there is an express promise to

pay. *This is a mere question as to the liability.* That appears as amply in one case as in the other. Still we are no nearer the result aimed at—indeed, further from it.

If the argument of the plaintiff, that the breach must be as wide as the contract, be valid to any extent, it must go to this—that you must negative the payment of every thing which the defendant is bound to pay, or which you claim he shall pay. The object of the breach is, to show how much of what *was* due remains unpaid. Every party claiming money by a declaration, must show, not only that the defendant *was liable* to pay it, but *that he has not paid it.* By what stress of argument is it proven, that because the *law* says what interest a man shall pay in one case, and the *contract* says what interest he shall pay in another case, you need not say that the interest is unpaid in one case, and must in the other? " The law says I may recover the interest, and *therefore* I need not aver that it has not been paid." This is the whole argument, stripped of all superfluity, and reduced to its naked simplicity. Is it not a perfect *non sequitur?* " The contract says that I may recover the interest, and *therefore* I need not aver that it has not been paid." Is not this equally as cogent an argument? There is, to our apprehension, no glimmering of connection between the premises and conclusion in either case. Where you aver that the principal is unpaid, does 'this involve in itself an allegation that the interest is unpaid? Does the fact that the law *implies* a promise to pay interest, or that interest accrues by operation of law, show, or tend to show, that it has not been paid?

In one case, there is a promise to pay interest—an express promise— which may, it is said, be unpaid. So in the other, there is a legal obligation to pay interest, apparent on the declaration—an implied promise—which may be unpaid.

It is *injudicious,* Chitty says, unnecessarily to narrow the breach; and no *inconvenience* can result from laying the breach as extensively as the contract; for the plaintiff may recover, though he only prove a part of the breach as laid. 1 *Ch. Pl.*, 329. Now it is manifest that this language, giving it the very broadest signification which it will bear, cannot apply to a case where interest is stipulated by the contract. In England, where no interest ever was *required* by law to be

paid, but, as we have shown, it only accrued by agreement, express or implied, no form of a declaration can be found, where the payment of interest is negatived. The parties there were allowed to *contract* for interest, and the Courts gave interest by implication, where none was expressly contracted for. But it was given upon the ground that it had been agreed to be paid, either expressly or by implication. But there, as here, it was recovered as *general damages;* and the rule is universal, that damages are matter of evidence, and need not be alleged, nor need they be stated, except in a general manner. *Barruso vs. Madan,* 2 *J. R.,* 149. The general prayer for damages is a demand for all interest, due either by the contract or by law, (if there could be such a distinction); and this demand implies an allegation that the interest is unpaid; and interest is in no case, as we apprehend the law, necessary to be claimed in any other way. It is only necessary for the breach to notice that which is the principal, and not that which is the incident. And if this simple principle is disregarded, confusion and difficulty must in our apprehension result.

The Supreme Court of Alabama, in *McWhorter vs. Standifer,* 2 *Porter,* 525, declared, that as damages, or interest substituted for them, depend in part on circumstances not in existence, to declare for it would be mere guess-work; and that whatever may be fixed at random, must be considered merely nominal.

Interest, they said, was substituted, by the statute, for damages at common law for the detention of the debt. " They now admit of no proof," said the Court, " and require no allegation, in contracts subjected to our own law. Their omission altogether, or their statement, no matter for how much or how little, is wholly nominal, formal, and of as little account in the balances of justice, as the appendage just below them, of *John Doe* and *Richard Roe,* as pledges to prosecute."

And there is a further consideration. If the stipulation for interest is an integral part of the contract, and must be demanded, and its payment negatived, the declaration should (if the argument be correct) contain two counts, one for the debt, and one for the interest. Yet a separate count for interest is never necessary.

But there is another point in this case. The rule that the breach must not be too narrow, does not apply to a case where a party

*Sumner against Ford & Co.*

covenants or contracts to pay *two* sums of money, or to do or perform two separate and distinct acts. If a breach is good in part, a demurrer to it must be overruled, if from the breach, as laid, a cause of action appears. *Amory vs. Brodwick*, 5 *B. & A.* 712; *S. C.* 1 *D. & R.* 361; *Duffield vs. Scott*, 3 *T. R.*, 374; *Orton vs. Butler*, 5 *B. & A.*, 652; *Samuel vs. Judin*, 6 *East.*, 333; *Powdick vs. Lyon*, 11 *East.*, 565.

If, therefore, a party could only recover ten per cent. interest by noticing it in the breach, *still this could be no objection on demurrer.* The only consequence would be, that not having demanded such interest, he could only recover legal interest. And in the present case, if he could not recover interest before the note fell due, without demanding it, or at least noticing it in the breach, the only consequence would be, that, on the trial, he would lose all the interest up to the time when the note fell due. It is perfectly clear, that in any event it was no objection on demurrer; for all that can be said of it, is, that he has chosen to declare for and demand only the legal principal and interest. On this point, therefore, the demurrer was properly overruled.

As to the other point presented by the record, which is, whether in an action against the maker of a note, or acceptor of a bill, payable at a particular place, it is necessary to aver a demand at that place, it is a question upon which, in England, conflicting opinions have been entertained.

It was held to be necessary, in *Ambrose vs. Hopwood*, 2 *Taun.*, 60; *Callaghan vs. Aylett*, 3 *Taun.*, 397; *Saunderson vs. Bowes*, 14 *East.*, 498; *Dickinson vs. Bowes*, 16 *East.*, 108; *Bowes vs. Howe*, in the Exchequer Chamber, 5 *Taunt.*, 30. It was held unnecessary, in *Nichols vs. Bowes*, 2 *Camp.*, 498; *Lyon vs. Sundius*, 1 *Camp.*, 423; *Wild vs. Rennards*, note at ib.; *Trapp vs. Spearman*, 3 *Esp.*, 57; *Kershaw vs. Cox*, 3 *Esp.*, 246; *Marson vs. Petit*, 1 *Camp*, 82; *Fenton vs. Goundry*, 13 *East.* 473; *Saunderson vs. Judge*, 2 *H. Bl.*, 509.

But the question is now probably at rest in England, it having been settled in the House of Lords, in *Rowe vs. Young*, 2 *Brod. & Bing.*, 165, to be necessary.

Without at present examining the case last cited, it is clear, as was said by a learned American Court, that, " admitting that, amidst these

Sumner *against* Ford & Co.

contradictory and fluctuating decisions, the question would be perfectly open to us, it would then become necessary to develope the principles adapted to the case, and to give effect to them, rather than to follow the oscillations of the English Courts."

In fact, Lord ELDON said, in *Rowe vs. Young*, that the state of the law, as actually administered in the Courts, was such, that it would be infinitely better to settle it in any way, than to permit so controversial a state to exist any longer. The Court of King's Bench was in the habit of holding that no averment of presentment was necessary. The Court of Common Pleas held directly the reverse. A distinction was taken in some cases between a note, where the place of payment was specified in the body of it, or a bill drawn payable, in the body of it, at a particular place; and an acceptance to pay at a particular place, of a bill payable generally. Another distinction was taken between a note payable on a *certain day*, at a particular place, and one payable *on demand*, at a certain place. The law as to *notes* has been, perhaps, not as *unsettled* as the law as to acceptances, in England; but it has been far from being settled. *Nichols vs. Bowes*, 2 *Camp.*, 498, and *Wild vs. Rennards*, 1 *Camp.*, 425, were on notes, where the place of payment was fixed in the body of the instrument; and in one, Lord ELLENBOROUGH, and in the other, BAYLEY, J., held an averment of demand unnecessary. Lord ELLENBOROUGH would not even *permit* it to be proven, though the plaintiff was ready to do it. BEST, J., in *Rowe vs. Young*, denies the distinction between a note and an acceptance. So does RICHALDSON, J. So does HOLROYD, J.

BAYLEY, J., in speaking of the case of *Saunderson vs. Bowes*, and the other cases on promissory notes, said that he could not distinguish them from *Fenton vs. Goundry;* for in the latter case, the acceptance, payable at the place, was no part of the original conformation of the bill itself; but in the former, the words restrictive of the payment, were incorporated in the original form of the instrument. " But," he said, " I do not wish to answer those cases on these grounds; for I am free to confess that I doubt the propriety of those decisions, although I was myself a party to them; and I think it more manly to say, that I consider my opinions in those cases erroneously formed, than to attempt

to distinguish these cases from *Fenton vs. Goundry*, by the use of nice and subtle differences." And so he denied the distinction. And so did Abbott, C. J. And even the Judges who dissented from them, admitted, and some of them argued strongly, that there was no difference.

This case of *Rowe vs. Young* was an action brought in K. B., against the acceptor of a bill, payable at a particular place; and no demand or presentment there averred. The plaintiff had judgment on demurrer, in the King's Bench; and the defendant removed the case into the House of Lords, by writ of error. The twelve Judges delivered their opinions seriatim:

Best, Richardson, Holroyd, and Bayley, Judges; Garrow and Graham, Barons; Richards, Chief Baron of the Exchequer; and Abbott, Chief Justice of the King's Bench, held the averment unnecessary. Burrough and Park, Judges; Wood, Baron; and Dallas, Chief Justice of the Common Pleas, held it necessary.

After these opinions had been delivered, Eldon, Lord Chancellor, and Lord Redesdale, holding the averments to be necessary, the House reversed the judgment.

Notwithstanding this decision, the weight of professional authority in England is clearly against it. In addition to the Judges, eight in number, who then held the averment unnecessary, the names of Ellenborough, Kenyon, Grose, and Mansfield, may be added. This leaves the preponderance of legal authority strongly against the decision of the House of Lords, which, though of the highest authority in England, as the Court of the last resort, has no other authority here than as it embodies the opinions of those who are known to have been eminent in learning and wisdom. The mere vote of the House, which may have been determined by the opinions of the unlearned members, has no such binding authority here as in England.

The law on this point is settled in England; but it is not settled for us. In this country it is settled otherwise, by a strong and almost unbroken current of decisions.

When a person makes a note or accepts a bill, he becomes an immediate debtor to the payee, upon a valuable consideration. Now, if not presenting the note or bill, at the time and place it is payable,

be a condition precedent to the liability of the maker of the note, or acceptor of the bill, a failure to present at the time or place, would occasion a total loss to the holder; for if it cannot be recovered in an action on the note or bill itself, in consequence of an omission to aver presentment at the time and place, no other form of action will lie, when that proof cannot be made.

The non-attendance of the holder of the bill, can produce no worse consequences to him than if he had attended, and, the money being tendered, he had refused to accept it. This would not extinguish the debt, nor could such tender be pleaded in bar of the debt, but only of the damages and costs, and with an allegation of *uncore prist;* and the money would have to be brought into Court.

This is a condensed abstract of the reasoning of Ch. J. SPENCER, in *Wolcott vs. Van Santvoord*, 17 *J. R.*, 248; and we do not see how its force can be avoided. The Supreme Court of New-York there held, that an averment of demand was unnecessary; that the time and place of payment were merely *modal*, forming no essential part of the contract; that it is incumbent on the defendant, whether the payee was at the time and place appointed, or not, to show, in his defence, that he was there, ready and willing to pay, and that the payee did not come, &c.; and that the consequences of such absence are, unless the payee makes a subsequent special demand, and there be then a refusal, merely, that he must be content with receiving the sum originally payable; and if he sue, without a special demand, he loses all claim to damages and costs, and will be himself subject to them.

To the same point was the decision in *Foden vs. Sharp*, 4 *J. R.*, 183. The same point was expressly decided in *Caldwell vs. Cassidy*, 8 *Cowen*, 271; and *Haxtun & Brace vs. Bishop*, 3 *Wend.*, 1.

So in Massachusetts, the same point was decided in *Carly vs. Vane*, 17 *Mass.*, 389; *Payon vs. Whitcomb*, 15 *Pick.*, 212; *Ruggles vs. Patten*, 8 *Mass.*, 480.

So in Maine, in *Bacon vs. Dyer*, 3 *Fairfield*, 19.

So in New-Jersey, in *Weed vs. Van Horton*, 4 *Hals.*, 189, after a full examination of the English cases.

So in New-Hampshire, in *Eastman vs. Fifield*, 3 *N. Hamp.*, 333.

So in Ohio, in *Cowan vs. Garro*, 1 *Ohio R.*, 483.

So in Tennessee, in *McNairy vs. Bell*, 1 *Yerger*, 502; *Mulkellin vs. Hannum*, 2 *Yerger*, 81.

So in Alabama, in *Irvine vs. Withers*, 1 *Stewart*, 234.

So in Virginia, in *Watkins vs. Crouch & Co.*, 5 *Leigh*, 522.

So in Maryland, in *Bawie vs. Duvall*, 1 *Gill & Johnson,*, 175.

The Supreme Court of the United States first intimated the same opinion in *The Bank of the United States vs. Smith*, 11 *Wheaton*, 171; and in *Wallace vs. McConnell*, 13 *Peters*, 136, the same Court gave a direct and explicit decision on the question, after a review of all the authorities. They held that the acceptor of a bill of exchange stands in the same relation to a drawer, as the maker of a note does to the payee; and that in neither case is the place of payment of any importance; and that, in actions on promissory notes against the maker, or on a bill against the acceptor, and the note or bill is made payable at a specified time and place, it is not necessary to aver in the declaration, or prove on the trial, that a demand of payment was made.

And they again made the same decision in 1840, in *Covington vs. Comstock*, 14 *Peters*, 43.

No American Court, it seems to us, would be justified in now adopting the very doubtful authority of the case of *Rowe vs. Young*, in opposition to so uniform and authoritative a current of decisions in our own country. It would be wantonly increasing the evil already so grievous, arising from a conflict of opinions among the different Courts in the United States, and in a case in which no reason can be imagined for such a dissent.

Lacy, J., delivered the opinion of the court:

This is an action of debt, founded upon a promissory note, made payable at the defendants' counting-room, in New-Orleans. The record presents several questions, which we will decide in the order they present themselves.

First. Is it necessary, in an action against the maker of a promissory note, or the acceptor of a bill of exchange, which was made payable at a particular place, to aver and prove presentment and demand at that place?

We are not at liberty to consider this point as open for investigation. It is finally and conclusively settled by the whole course of American decisions.

It is true that, in England, there existed, since 1811 up to 1820, great diversity of opinion upon the point, between the Judges of the Courts of King's Bench and Common Pleas. Since that time, the principle has been well settled, the case of *Rowe vs. Young*, 2 *Brod. & Bingham*, 181; and the judgment of the Court of King's Bench, was reversed upon error, by the House of Lords, notwithstanding eight Judges out of the twelve were opposed to the decision. The doctrine now established there is in conformity to the opinion of the Court of Common Pleas, as laid down in *Callaghan vs. Aylett*, 2 *Camp*. 549. The rule in England now is, that in an action against the maker of a note, or acceptor of a bill, payable at a particular place, it is necessary to aver and prove a presentment and demand at that place. It is to be regretted that the rule in England and in the United States is not uniform.

We are, however, constrained to follow the decisions of our own country, which we believe are fully sustained by most if not all the early cases in the English Courts. The weight of authority in England is unquestionably against the judgment of the House of Lords, and in conformity with the principle established by all the superior or appellate Courts of the States that have passed upon the point, as well as by the Supreme Court of the United States. *Ambrose vs. Hogswood*, 2 *Taunt.*, 60; *Callaghan vs. Aylett*, 3 *Taunt.*, 397; *Nichols vs. Bowes*, 2 *Camp. N. P.* 498; *Lyon vs. Sundius and Sheriff*, 1 *Camp. N..P. R.* 423; *Wild vs. Rennards*, 1 *Camp. N. P. R.* 423; *Trapp vs. Spearman*, 3 *Esp. R.*, 57; *Fenton vs. Goundry*, 13 *East.*; *Smith vs. Delafontaine*, same; *Foden vs. Sharp*, 4 *J. R.*, 183; *Wolcott vs. Van Santvord*, 17 *J. R.* 248; *Caldwell vs. Cassidy*, 8 *Cowen*, 271; *Carly vs. Vans*, 17 *Mass.*, 389; *Ruggles vs. Patton*, 8 *Mass.* 480; *Weed vs. Van Houten*, 4 *Halstead*, 189; *Watkinson vs. Crouch & Co.*, 5 *Leigh*, 522; *Bowie vs. Duvall*, 2 *Gill & Johnson*, 175; *Bank U. S. vs. Smith*, 11 *Wheaton*, 171; *Wallace vs. McConnell*, 13 *Peters*, 136; *Covington vs. Comstock*, 14 *Peters*, 43.

The authorities here quoted unquestionably prove, that in an action

against the maker of a promissory note, or the acceptor of a bill of exchange, payable at a particular place, it is not necessary to aver and prove presentment at.that place.

The principal reason assigned, is, that the maker and acceptor are principal debtors to the obligee or holder of the bill, and their liability arises upon a valuable consideration. Their undertaking is an agreement to pay generally, and not conditionally; therefore, it is not necessary to prove presentment at the place of payment. The term, payable at a particular place, is but an intimation or direction that they will have the money there, ready to pay the note or bill when it becomes due. That being the case, it does not enter into or form any part of the contract; consequently, a failure to present the note or bill, does not extinguish the debt or duty; and if the money is ready at the place, on the day it becomes due, it is matter of defence, and may be pleaded in bar of damages, by way of tender, but not in bar of the cause of action.

Although it is not necessary to aver and prove presentment and demand, to maintain the action, it is nevertheless important to state the place at which the note or bill is to be paid, by way of description. And so it has been expressly decided in the case of *Covington vs. Comstock*, 14 *Peters*, 43. For unless it be so stated, the Court, it is said, may not know what judgment to render, both as it respects the interest and other matters; the *lex loci*, and not the *lex fori*, attaching to the contract.

The principle here stated shows that the second count is defective, in not alleging, by way of description, the place in which the note was payable. The first count is well laid, for it properly sets out the place of payment. The declaration contains, then, one good and one bad count. The demurrer, being joint and several under our statute, reached both counts; and, consequently, the Court ought to have overruled it as to the first count, and to have sustained it as to the second. This they did not do, but gave an entire and final judgment against the defendant below, upon demurrer.

This suit is brought upon a note, bearing interest from date, but payable thereafter. If the party seeks to recover the interest from the date of the note, according to his contract, he must aver its non-

payment upon that day. This is a stronger case than *Clary & Webb vs. Morehouse's Adm.*, decided at the last Term of this Court. The law does not raise a presumption in favor of a debt or duty bearing interest, until it falls due. The note then bearing interest from the date, and the debt being made payable thereafter, to recover the interest accruing before the time of payment, the declaration must show, upon its face, non-payment of such interest, or the Court will only give interest from the time note becomes due.

The judgment of the Circuit Court must, for the reasons above stated, be reversed, and the cause remanded for further proceedings to be had therein, in conformity with law, and the opinion here expressed.

And the same Term, PIKE, for defendants in error, filed the following petition for a re-hearing:

The defendants in error in this case, come and most respectfully move the Court here for a re-hearing of this case, upon the following grounds:

*First.* That in the opinion of the Court it is decided that the second count of the declaration was bad, because it described a note payable generally; whereas, the note given on oyer was payable at a particular place. Unquestionably, if there had been *no* count in the declaration with which the note had agreed, it would have been fatal on demurrer. But here the plaintiff sued on two notes: oyer being craved, he produced but one; consequently, he could only recover on the first count, and abandoned his second. Suppose he had sued on two notes, one for a thousand and the other for two hundred dollars, and, before trial, the smaller note had been arranged, or paid, or lost. If, on oyer, he gave a copy of only the larger note, and that agreed with the first count, how could there be a variance between it and the second count, founded on a different note? It is most respectfully believed that the Court has, in this respect, inadvertantly fallen into an error.

*Second.* The defendants submit to the Court, whether, under our practice, the statute providing that demurrers may be joint and several, a demurrer is so, unless it is so specially expressed in the demurrer; and whether, if a general demurrer be filed to a declaration containing

two or more counts, it can be construed to be a joint and several demurrer, so that for one good count it should not be sustained.

*Third.* The Court remarks, in its opinion, that, as the note bears interest from date, and the debt is payable *in futuro*, "*to recover the interest accruing before the time of payment,* the declaration must show upon its face non-payment of such interest, *or the Court will only give interest from the time it becomes due.*" The correctness of this position we do not desire to controvert; but, with great deference, we submit, whether the omission is any ground for demurrer. The Court correctly point out the consequences of the omission. If the plaintiff does not choose to demand interest from date, it may amount to an admission that all the interest up to the time when the principal fell due, has been paid. This is the consequence pointed out by the Court. " The Court," they say, " will only give interest from the time the principal becomes due." That is all the plaintiff has claimed in this declaration. He has waived all claim to any thing more, and demands no more. Can this be ground of demurrer? Suppose suit was brought on a note for so much, and the current rate of exchange. If the plaintiff did not demand the exchange, nor negative the payment of it, he could not recover it; but his declaration would not be demurrable.

Now in this case, if there be error in this particular, it seems to us that it consists not in overruling the demurrer, but, if such were the case, in giving judgment for the interest from the date of the note to the end of the thirty days, when the principal fell due. Does it appear that the Court below did so? It is not assigned for error; and the judgment is merely for so much debt and so much damages.

And even if this error does exist, it is important not only in this case, but in regard to the practice generally, that the decision should be placed on true and tenable ground; and therefore it is, that, for the first time in my practice, I have, after much consideration, moved the Court for a re-hearing.

The re-hearing having been granted, and the case re-considered—

DICKINSON, J., delivered the opinion of the court:

The common law rule, that, upon general demurrer, one good count

in a declaration is enough to entitle the plaintiff to judgment, is changed by our Revised Statutes, (sec. 62, p. 628,) which provide that " demurrers may be joint and several, and may be sustained as to part of the pleadings, and overruled as to the residue, according to the circumstances of the case, with like effect in all respects, as if a separate demurrer had been filed to each pleading demurred to." Consequently the demurrer in this case must be considered as joint and several, and go to both counts; the first of which is good, the contract set out corresponding with the note given on oyer. The second count, however, is clearly defective, the place of payment being wholly omitted. The defendants in error contend that the judgment is well taken; that they may have sued on two notes, and the one described in the second count may have been paid or settled, and ought to be considered as virtually abandoned. The record, as we think, shows that the two counts were founded upon the same note, and that the oyer given was intended to apply to both, but failed to meet the second count; and the variance being fatal under the statute, which we cannot disregard, judgment ought to have been entered for the plaintiff on the good count, and for the defendant upon the other, in the same manner as if separate demurrers had been filed to each one. If the plaintiffs below had intended to abandon the second count, they should have discontinued upon it before judgment; or even after judgment upon the whole declaration, they might, upon discovering their error, beg leave of the Court to have waived their judgment upon the imperfect count, and entered it for the defendant. *Union Turnpike Company vs. Jenkins*, 1 *Caine's Rep.*, 381; *Stafford vs. Green*, 1 J. R., 505; *Backus vs. Richardson*, 5 J. R., 476.

There is, however, another objection expressly raised on the demurrer to the whole declaration, viz: the sufficiency of the breach. The first count is upon a contract for $571 86, with interest from date. The breach is not co-extensive with, but narrower than, the contract; averring the non-payment of the several sums of money mentioned, but not the non-payment of the interest, which the party had agreed to pay from the date; and, therefore, the breach is, for this omission, defective.

It certainly does appear from the record, that interest, as damages,

was given the plaintiffs from the date of the note, although there is no allegation in the breach of its non-payment; and though it is not expressly assigned as error, it is raised in argument, and therefore cannot be disregarded.    We are bound to look into the whole record, and give such judgment as the Circuit Court ought to have given, or as may seem most agreeable to law. *R. S., sec.* 36, *p.* 648.

There has been no motion to remit the excess for interest, since the entry of the judgment; and the plaintiff is not entitled to any more than he claims in his declaration.    No matter upon what ground the judgment is wrong, if it operates unjustly and illegally upon the rights or interests of the other party, he is entitled to the aid of this Court. The plaintiff takes judgment at his peril: he may *relinquish* as much as he thinks proper; the doing so is no just cause of complaint to the defendant.    But he cannot be permitted to retain a judgment for a larger sum than, by his own pleading, he shows himself entitled to. Therefore, the judgment of the Circuit Court must be reversed, with costs, and this case remanded for further proceedings to be had therein, according to law, and not inconsistent with this opinion.