The City of Springfield, plaintiff in error, *v.* Horace Hickox *et al.*, defendants in error.

*Error to Sangamon.*

An order drawn by the mayor of a city on its treasurer, commonly called a city order, is a proper subject of set off in a suit brought by such city against the holder of the order, if the nature of the action will admit of a set off.

In an action of debt by a city to recover a penalty accruing under an ordinance, the defendants filed, by way of set off, a city order drawn by the mayor upon the treasurer:  *Held* to be a proper subject of set off, and that a prior demand on the treasurer was not necessary to charge the city upon such order.

This was an action originally brought before the Mayor of the city of Springfield to recover the sum of twelve dollars of the defendants for a debt incurred as a penalty under

an ordinance of the city requiring licenses to be taken out by merchants, &c. The case was taken by appeal into the Sangamon Circuit Court, and there heard before the Hon. Samuel H. Treat, at the November term 1844. The defendants having filed and proved a set off, the Court rendered a judgment in their favor for $38, and costs.

*W. I. Ferguson*, for the plaintiff in error, made the following points:

1. The order filed in offset is similar to an inland bill of exchange, and the same steps are necessary to charge the parties. 3 Johns. Cases, 5.

The same proof is requisite in offering a set off, as in maintaining a suit on the same matter. 10 Wend. 304.

The defendants, by their own act, have admitted the necessity of a demand, having made a demand after the commencement of the suit, their claim not being due when suit was instituted. 9 Johns. 121; 6 Cowen, 484.

2. It was necessary for the defendants to show, that they were the legal holders of the order at the commencement of the suit. They should also show when it was assigned to them. 2 Johns. 276; 19 do. 324.

3. It was incumbent on the defendants to prove that there were unappropriated moneys in the City Treasury. 2 Lord Raym. 1361; 1 Ala. 173; 3 Wilson, 207.

*J. A. McDougall*, for the defendants in error, in relation to the *first* point made by the counsel for the plaintiff in error, cited *Kaskaskia Bridge Co.* v. *Shannon*, 1 Gilman, 15.

The demand, if necessary, was seasonably made. The defendants had a right of action on the order at the time of the first trial.

As to the *second* point of counsel; the order is of a date anterior to the commencement of the suit. The presumption of law is, that the assignment, when made in blank, was made before due.

As to the *third* point; the defendants were not required to prove unappropriated moneys in the Treasury of the City.

*A. Lincoln*, in conclusion for the plaintiff in error, cited *Kaskaskia Bridge Co.* v. *Shannon*, 1 Gilman, 15, to show the necessity of a demand.

Nothing can be set off at the trial, which was not a subject of set off at the time the suit was commenced. *Kelly* v. *Garrett*, 1 Gilman, 649.

The Opinion of the Court was delivered by

PURPLE, J.* This suit was originally instituted by the plaintiff in error against the defendants in error, before the Mayor of the city of Springfield, to recover the sum of twelve dollars, for a debt incurred by the defendants as a penalty for the violation of certain ordinances of the city requiring all merchants, retailers, grocers, &c., to procure annually from the City Council a license, in default of which, the party is made liable to the penalty of twelve dollars, to be collected by action before the Mayor.

The summons was issued by the Mayor on the twenty second day of August, 1844, and returnable on the twenty ninth. Upon the hearing, the Mayor gave judgment for the plaintiff, and the defendants appealed.

Upon the trial before the Mayor, and also in the Circuit Court, the defendants offered in evidence the following instrument, commonly called a city order, as a set off to the plaintiff's claim, and contended that judgment should be rendered in his favor for the balance, deducting said plaintiff's demand.

"$50. Receivable for taxes on real estate and personal property.

City of Springfield, Ills., Feb'y 21, 1846.

The Treasurer of the City of Springfield will pay V. Hickox, or order, the sum of fifty dollars and —— cents, with six per cent. interest per annum from date until paid, out of any unappropriated monies in the Treasury, being in accordance with a resolution of the City Council.

Andrew McCormick, Mayor.

James C. Conkling, Clerk City Council."

Indorsed, "pay to Hickox & Brothers,     V. Hickox."

---

* WILSON, C. J., did not sit in this case.

The bill of exceptions shows, that on the trial in the Circuit Court, which, by consent, was without a jury, the plaintiff produced and proved the charter of the city of Springfield, and the ordinances of the City Council imposing the penalty for the recovery of which suit had been instituted. Defendants admitted, that at the commencement of the suit they were trading as merchants in the city of Springfield, and had not taken out a license, and that the ordinances before mentioned had been regularly published according to the charter.

Defendants then proved, that on the twenty eighth day of August, A. D. 1844, they presented the order before set out to the treasurer of the city for payment, which was refused, there being no funds in the treasury, and proved by the city treasurer that there was not then, and had not been for some time previous, any funds in the treasury, either appropriated or otherwise.

The plaintiff then read in evidence from the city record the following resolution:

"And be it further resolved, that all orders issued for the purposes aforesaid, shall, at all times, be received by the city for the personal property and real estate tax due said city;" and offered to prove, that at the time of its passage, the Council understood that this resolution made the orders issued under it, of which the $50 order produced by the defendants was one, receivable only in payment of taxes assessed on real and personal property; and that V. Hickox was one of the firm of Hickox & Brothers, and knew of this resolution and the construction of the Council upon it before he received the same. The Court rejected the evidence, and the plaintiff excepted.

Judgment was then rendered for the defendants for $38 and costs; the plaintiff appealed to this Court, and now assigns for error,

1.  The admission of the city order in evidence;
2.  The exclusion of plaintiff's testimony as offered; and
3.  The rendition of judgment for the defendants.

In my judgment, the evidence offered by the plaintiff below

to prove that the order was not what on its face it really pur-
ported to be, was properly rejected.

The resolution of the City Council, if of any force, could
not operate to vary the terms or conditions of this instru-
ment.   It was issued by the city as evidence of a debt due
to the payee from the city, payable out of any unappropria-
ted funds in the treasury; and it can scarcely be contended
that because the City Council provide, by resolution, that it
may be receivable in payment of taxes on real and personal
estate, the person to whom the same is made payable, or his
assigns, who, possibly, might have no taxes to pay, would
not have the right to demand the payment thereof in money,
according to the tenor of the obligation.   And, with stronger
reason, a construction of a resolution of the City Council,
although known to the defendants at the time they received
the order, directly at variance with the legal import of the
resolution itself, and which tends to vary the terms and obli-
gation of a written instrument, cannot be permitted to pre-
vail.

But the material point in this case is presented by the first
and third assignments of errors: whether the order, under
the circumstances, could properly be the object of a set off.
This question involves the consideration of the nature and
character of the instrument, and the remedy which the
payee, or his assignee, may have against the parties to the
same.

The instrument sought to be set off in this case, is an order
drawn by the Mayor of the City on the treasurer of the City
in favor of V. Hickox, and by him assigned to the defend-
ants.

The third section of the Act of March 4, A. D. 1843,
(session laws, page 67), makes orders of this description
negotiable and payable to the assignee of the person in whose
favor they are drawn.  In the absence of proof to the contrary,
the presumption of law is, that it was indorsed to the defend-
ants on the day of its date.   In form and character it is some-
what assimilated to bills of exchange, and is probably sub-
ject to some of the rules which govern the liability of the

parties to such bills. Although upon its face it purports to be a bill drawn by the Mayor on the treasurer of the City, yet, in legal contemplation, it is drawn by the City on the City. The Mayor and treasurer acting only as agents appointed by the principal, the one to issue the evidence of indebtedness, and the other to make the payment at the place, and in the manner directed, and appointed by the principal. Neither the Mayor or the treasurer are personally responsible for the money. The whole,—the making, acceptance and payment is the act of the city only.

It is neither necessary nor proper that the treasurer, who is nominally the drawee, should accept the bill. The city is the drawer and acceptor also. By the mere act of drawing it accepts. The draft is legally on itself. The officers are only a portion of the machinery of a political corporation, created by the corporation itself, to aid in transacting its business with accuracy and facility. So far as the payee is concerned, the city in its corporate capacity is alone responsible for the payment of the order, and the Treasury is the place where it agrees that the money shall be paid. Let us see what is the object of such presentment and demand, in cases of ordinary bills of exchange.

"The reason," says Chitty, in his Treatise on Bills of Exchange, "why the law in general requires the holder to give prompt notice of non-payment by the drawee of a bill or maker of a note is, that the drawer of a bill and indorser of a note may, by such notice, be enabled forthwith to withdraw his effects from the hands of the drawee or maker, or to stop those about to be delivered to him, and to suspend any further credit, and that the drawer and indorser respectively take the necessary prompt measures against all parties liable to them, to enforce payment; and if such prompt notice be delayed, it is a presumption of law that the drawer and indorsers have been prejudiced."

These are the reasons given in the law, why notice to such parties to a bill as might be prejudiced by the delay of the holder to present the same for payment or acceptance, is required.

This presentation and demand must be made at the maturity of the bill or note, and due notice given; otherwise the drawer or indorser of a bill, or the indorser of a note would be discharged. So far as they are concerned, this presentment and notice is a condition precedent to a right of action by the holder. But if there is any authority to show that the maker of a note, or the acceptor of a bill of exchange are, in any manner, legally prejudiced or released on account of a failure to demand payment, or to give notice to other parties; or that such maker of a note, or acceptor of a bill can object that payment was not demanded before suit brought, I have not been able to find it. In law, they are placed precisely on the same footing. They are principal debtors, originally liable, while the liability of drawers and indorsers depend upon the conduct and vigilance of the holder. There is, it is true, some loose doctrine in Chitty on Bills, p. 353–5, to the effect that it seems that a party entitled to the money due him upon a bill of exchange cannot, by the custom of merchants, insist upon payment even by the acceptor, without presenting the bill and offering to deliver it up. This is, however, questioned in page 359 of the same book, where it is said, "that the acceptor, or maker of a note cannot resist an action on account of neglect to present the instrument at the precise time when due, or of an indulgence to any of the parties, and on the above mentioned principle, that an action is, of itself, a sufficient demand of payment, it has been denied that the acceptor, or maker of a note cannot set up as a defence, the want of presentment to them before the commencement of the action, although the instrument be payable on demand."

Even if such presentment and demand were necessary in actions against acceptors and drawers, all the American decisions concur in admitting and establishing the principle, that this necessity cannot exist, except in cases where the action is upon the instrument itself; and that if the declaration contains a count for money had and received, or upon an account stated, the note or bill may, as evidence of indebtedness, be given in evidence under such counts. In every case, where by law a demand is necessary, such de-

mand must be specially alleged in the declaration, and proved upon the trial. Under the common money counts, or upon an account stated, no such special allegation or proof is requisite.

In the case of. *Grant* v. *Vaughn*, 3 Burrows, 1516, Lord Mansfield held, that a note payable to bearer, which had been lost and came to the plaintiff's hands in the usual course of business, might be given in evidence under the count for money had and received.

In *Penn* v. *Flack & Cooley*, 3 Gill. & Johns. 369, it is decided, that the indorsee of the payee of a negotiable note could maintain the action for money had and received against the maker of the note upon proof of the note and indorsement; and the same question has been repeatedly settled in the United States, in the cases of *Paige's Adm'rs* v. *The Bank of Alex'a*, 5 Peters' Cond. R. 222; *Rockfellow* v. *Robinson*, 17 Wend. 206; *Prince* v. *Crofts*, 12 Johns. 90; *Elsworth* v. *Bruen*, 11 Pick. 316. And in *Raborg* v. *Peyton*, 4 Peters' Cond. R. 175, it is stated, that "in point of law, every subsequent holder, in respect to the acceptor of a bill and the maker of a note, stands in the same predicament as the payee. An acceptance is as much evidence of money had and received by the acceptor to the use of such holder, and of money paid by such holder for the use of the acceptor, as if he were payee."

The same doctrine is re-affirmed in the case of the *Kaskaskia Bridge Company* v. *Shannon*, 1 Gilman, 15.

In that case, the Court remark: "Had the plaintiff below declared on an account stated instead of the instrument itself, this draft, under the circumstances of the case, might have been given in evidence of settlement." Testing this case by the rule thus laid down by this Court, the ruling of the Circuit Court in admitting the evidence was right. Here was an order drawn by the Kaskaskia Bridge Company on their treasurer, and the action was brought on the order alone; the declaration contained no count upon an account stated, nor for money had and received. If these counts had been added, then, by the decision there made, the action

could have been sustained.   When a party seeks to set off a demand, if in any shape it could be the subject of a set off, he may avail himself of the benefit of all the counts, or causes of action under which he could, by any manner of means, have given it in evidence, had suit been brought by him to recover the same sum of money.   In short, if it is a claim or demand which, within the meaning of our statute, he could sue for in debt or *assumpsit*, he can set it off against any claim or demand of a similar character for which he is liable to be sued.

It is true, that in the case last referred to, where the declaration was upon the order or bill alone, a demand upon the treasurer who was the drawee was held necessary even though it seems to have been admitted that, in legal contemplation, the drawer and drawee were the same,—the Kaskaskia Bridge Company.

In the present case, I regard the instrument sought to be set off as furnishing evidence of indebtedness to that amount from the plaintiff to the defendants, and of a promise to pay that sum.   The order itself is not the debt.   In any light it can be viewed, it is but evidence of it.   The debt existed before it was drawn, and is by no means extinguished, or the defendants right to payment postponed by the operation. The plaintiff is both drawer and acceptor, and admitting that the reasonable inference from the contract is, that the agreement is to pay the same at the City Treasury, still no demand on the treasurer is required to enable the defendants to sue for, or set off this claim, any more than in the case of a suit against the maker of a promissory note payable at a particular place.   In the case of a promissory note or bill of exchange, payable at a bank, or other place specified, the authorities, so far as I have been able to examine them, all concur that it is unnecessary, in order to charge the maker of the note, or the acceptor of the bill, that the holder should attend at the bank, or other place on the day of payment, or at any other time before or after, to demand such payment of the maker, or acceptor, before he can maintain an action against them for the same.   They are the principal

debtors, and it is their business to have the money ready at the place on the day and time appointed for the payment, and if the plaintiff is not there to receive the money, the defendant, if sued, must plead this offer of payment by way defence, and by tendering the money in Court, he may relieve himself against costs.

"The acceptor of a bill stands in the same relation to the drawee, as the maker of a note does to the payee. The acceptor is the principal debtor, precisely like the maker of a note. The liability of the acceptor grows out of, and is to be determined by the terms of his acceptance. The liability of the maker of a note grows out of, and is to be determined by the terms of the note, and the place of payment can be of no more importance in the one case than the other." *Wallace* v. *McConnell*, 13 Peters, 136; *Bank of U. S.* v. *Smith*, 6 Peters' Cond. R. 171; *Walcott* v. *Vansentwood*, 17 Johns. 267. Each of the above mentioned cases expressly and unequivocally maintain the doctrine which I have just advanced.

If the treasurer, upon whom nominally this order was drawn, had been liable for the payment of the money in case he had accepted the same as treasurer—if the action, in any event, could have been against him, of course the order should have been presented, and his acceptance procured before he could have been liable to such action; and the city, in such case, would have been entitled to notice of non-acceptance or non-payment before it could have been chargeable for the amount. Or, if suit had been instituted upon this order against the city before any demand of payment, and it could be shown in defence that the money had always been ready at the treasury according to the terms of the contract, then, by tendering the money in Court, the city could be relieved from costs. I can see no good reason why, in this respect, a political corporation should be placed in a more favorable position than a private citizen. If we admit the principle, that city corporations are liable to any suit upon evidences of indebtedness issued by them, I cannot see upon what principle, when they stand in the relation of draw-

The City of Springfield *v.* Hickox *et al.*

ers of notes and acceptors of bills, they are not, like natural persons, responsible in the first instance without any demand or notice.

It is against the policy of the law and the interests of the public, that these orders should circulate as money. They should, in reality, be what, upon their face they purport to be, drawn upon a real existing fund instead of an imaginary prospective one.

To whatever other use they may have been practically perverted, in point of law they were only designed to furnish evidence of the amount due from the city to the person in whose favor they are drawn, and as a voucher to the treasurer for the amount of money paid out by him.

It never was the intention of the law, that these orders should be permitted to supply the place and perform the office of currency; and, in my judgment, the property of the citizens, and of the corporations themselves, would be much more rapidly advanced if they were never permitted to be issued, except when there is money in the treasury to meet the demand. If this obvious policy of the law is enforced by such construction, and these corporations, like individuals, made liable to immediate suits upon their contracts, the tendency would be to discourage their incurring embarrassing liabilities, the consequent depreciation of their paper, and avoid the necessary sacrifice occasioned to the holder by such depreciation. Mutual demands in equity extinguish each other; and unless we hold the doctrine, that political corporations of this sort are not liable to be sued upon their contracts and obligations thus issued,—unless we allow them the privilege of collecting debts due to them, and compel the holder of their paper to wait the tardy operation of an assessment and collection of taxes for the payment of his claim, without the privilege of a set off, I can see no just reason why the judgment in this case should not be affirmed.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*